UNITED STATES, Appellee

v.

Jermaine M. CLAY, Private First Class
U.S. Marine Corps, Appellant

No. 05-0779

Crim. App. No. 200101952

United States Court of Appeals for the Armed Forces

Argued October 17, 2006

Decided January 25, 2007

BAKER, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN, J., joined.

STUCKY and RYAN, JJ., did not participate.

Counsel

For Appellant:  Lieutenant Richard H. McWilliams, JAGC, USNR (argued); Lieutenant Robert Salyer, JAGC, USN (on brief).


For Appellee:  Major Wilbur Lee, USMC (argued); Commander Charles N. Purnell II, JAGC, USN, (on brief); Colonel Ralph F. Miller, USMC, and Lieutenant Kathleen A. Helmann, JAGC, USNR


Military Judge:  P. J. McLaughlin


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge BAKER delivered the opinion of the Court.

Appellant was tried by a general court-martial composed of officer and enlisted members. Contrary to his pleas, he was convicted of one specification of rape and two specifications of indecent assault in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 934 (2000). The adjudged sentence included a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged. The court below affirmed. United States v. Clay, No. NMCCA 200101952 (N-M. Ct. Crim. App. July 29, 2005).

On Appellant's petition, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE
> DENIED THE DEFENSE CHALLENGE FOR CAUSE AGAINST COLONEL [J],
> A MEMBER DETAILED TO THE COURT-MARTIAL PANEL, WHO
> DEMONSTRATED A DRACONIAN AND INELASTIC ATTITUDE TOWARD
> SENTENCING.

BACKGROUND

Appellant, an E-2, was accused of raping and indecently assaulting a female Marine lance corporal, and of indecently assaulting a female Marine private first class.

Appellant's court-martial consisted of eight members, four officers and four enlisted personnel. The senior member selected to serve on the panel was Colonel (Col) J. On voir

2

dire, Col J was asked whether his ability to judge the case would be affected by the fact that he had two daughters. In response, Col J stated:

> I will objectively view the case; but let me be very candid. I have a 15-year[-]old daughter and a 7-year[-]old daughter who I would protect with my life; and <u>if I believed beyond a reasonable doubt that an individual were guilty of raping a young female, I would be merciless within the limit of the law.</u>

> Emphasis added. Upon further questioning by trial counsel, the following exchange took place:

> TC: Colonel, as far as the case in front of you today, are you saying that the fact that you have two daughters would prevent you from viewing the evidence presented to you in court objectively?

> [Col J]: No, I'm not saying that at all. <u>I'm just saying that I view that particular offense, should an individual be guilty of that offense, as being as serious [an] offense as I can think of</u>.

> TC: But you are basically saying that at this moment, you do presume the accused to be innocent in this case?

> [Col J]: Yes.

> TC: And you would wait until there was evidence presented to see if the government has met its burden of proof?

> [Col J]: Absolutely.

> TC: Let's assume, sir, that there is a sentencing phase in this case, the judge would instruct you that you would have to be able to consider the entire range of punishments that this court-martial may lawfully impose as a punishment and that would include from the maximum punishment available down the scale to one of the appropriate punishments could be no punishment. But you are required to at least consider those and that would depend on obviously sentencing evidence, aggravation evidence, extenuation and mitigation. Do you understand that?

3

[Col J]:  Yes, I do.

TC:  At the beginning point you would have to have an elastic view toward sentencing to be able to view the full range of punishments.  Could you do that, sir?

[Col J]:  <u>I believe I could.  I just wanted to be candid about my own moral convictions with regard to this</u>.

TC:  My direct question, sir, is that if the judge directed you that you're required as a matter of law to consider the entire range of punishments, would you do that?

[Col J]:  I would do so.

Emphasis added.  Based on this exchange, Appellant challenged Col J for cause.  The military judge denied the challenge without explanation.  Appellant exercised his sole peremptory challenge against Col J.  He preserved this issue for appeal by stating that he would have used his peremptory challenge against another court member had the challenge for cause against Col J been granted.  <u>See</u> Rule for Courts-Martial (R.C.M.) 912(f)(4).

DISCUSSION

It is settled law that a military judge should grant a challenge for cause not only where a court member demonstrates an inelastic disposition concerning an appropriate sentence for the offenses charged, but also where the presence of that member on the panel would create an objective appearance of unfairness in the eyes of the public.  R.C.M. 912(f) Discussion; <u>United States v. Giles</u>, 48 M.J. 60, 62-63 (C.A.A.F. 1998).  The

4

question in this case, is whether Col J's responses during voir dire created an objective perception that Appellant would not receive a fair sentence determination and whether the military judge should have granted an implied bias challenge.

The Government contends, and the lower court agreed, that the military judge did not abuse his discretion because Col J did not display either actual or implied bias in favor of a harsh sentence in all cases of rape. Clay, No. NMCCA 200101952, slip op. at 4. In the lower court's words, Col J's "notion of appropriate punishment was made as the father of two daughters, the eldest of whom was 15, and applied specifically to 'an individual . . . guilty of raping a young female.' His premise did not apply in this case, where the victim was an adult marine." Id. Appellant argues, as he did at trial, that Col J's responses during voir dire exhibited an inelastic disposition on sentencing. According to Appellant, based on either actual or implied bias, the military judge erred by not dismissing Col J for cause.

R.C.M. 912(f)(1)(N) requires the removal of a court member "in the interest of having the court-martial free from substantial doubt as to legality, fairness and impartiality." This rule encompasses both actual and implied bias. United States v. Strand, 59 M.J. 455, 458 (C.A.A.F. 2004). Actual and implied bias are "separate legal tests, not separate grounds for

challenge." United States v. Armstrong, 54 M.J. 51, 53 (C.A.A.F. 2000).

Because a challenge based on actual bias involves judgments regarding credibility, and because "the military judge has an opportunity to observe the demeanor of court members and assess their credibility during voir dire," a military judge's ruling on actual bias is afforded great deference. United States v. Daulton, 45 M.J. 212, 217 (C.A.A.F. 1996). In light of Col J's statements on the record that he could be fair, and the military judge's observations of those statements, the issue in this case is not one of actual bias, but one of implied bias, and in particular, the application of the liberal grant mandate.

Implied bias is an objective test, "viewed through the eyes of the public, focusing on the appearance of fairness." United States v. Rome, 47 M.J. 467, 469 (C.A.A.F. 1998). Accordingly, a military judge's ruling on implied bias, while not reviewed de novo, is afforded less deference than a ruling on actual bias. Strand, 59 M.J. at 458. Further, in light of the role of the convening authority in selecting courts-martial members and the limit of one peremptory challenge per side, military judges are enjoined to be liberal in granting defense challenges for cause. United States v. Moreno, 63 M.J. 129, 134 (C.A.A.F. 2006). Challenges based on implied bias and the liberal grant mandate

United States v. Clay, No. 05-0779/MC

address historic concerns about the real and perceived potential for command influence on members' deliberations.[1]

The liberal grant mandate has been recognized since the promulgation of the Manual for Courts-Martial, United States (1951 ed.). See United States v. White, 36 M.J. 284, 287 (C.M.A. 1993). Recently, this Court stated "[a]gain, we note that this Court has enjoined military judges to follow a liberal grant mandate in evaluating challenges for cause." United States v. Leonard, 63 M.J. 398, 402 (C.A.A.F. 2006). We emphasized the same point in Moreno when we stated that "'[m]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause' asserted by an accused. . . . Thus, we will overturn a military judge's ruling on an accused's challenge for cause where he clearly abuses his discretion in applying the liberal grant mandate." 63 M.J. at 134 (citations omitted). A military judge who addresses implied bias by applying the liberal grant mandate on the record will receive more deference on review than one that does not. "We do not expect record dissertations but, rather, a clear signal that the military judge applied the right law. While not required, where the military judge places on the record his analysis and

---

[1] The criteria for member selection specified by Article 25, UCMJ, 10 U.S.C. § 825 (2000), and challenges for cause based on R.C.M. 912(f) are additional safeguards against both the reality and perception of unfairness.

7

United States v. Clay, No. 05-0779/MC

application of the law to the facts, deference is surely warranted." United States v. Downing, 56 M.J. 419, 422 (C.A.A.F. 2002).

In short, the liberal grant mandate is part of the fabric of military law. The mandate recognizes that the trial judiciary has the primary responsibility of preventing both the reality and the appearance of bias involving potential court members. To start, military judges are in the best position to address issues of actual bias, as well as the appearance of bias of court members. Guided by their knowledge of the law, military judges observe the demeanor of the members and are better situated to make credibility judgments. However, implied bias and the liberal grant mandate also recognize that the interests of justice are best served by addressing potential member issues at the outset of judicial proceedings, before a full trial and possibly years of appellate litigation. The prompt resolution of member challenges spares the victim the potential of testifying anew, the government the expense of retrial, as well as society the risk that evidence (in particular witness recollection) may be lost or degraded over time. As a result, in close cases military judges are enjoined to liberally grant challenges for cause. It is at the preliminary stage of the proceedings that questions involving

8

member selection are relatively easy to rapidly address and remedy.

This Court has stated that in the absence of actual bias, "implied bias should be invoked rarely." Leonard, 63 M.J. at 402 (citations and quotations marks omitted); Strand, 59 M.J. at 458 (citations and quotations marks omitted); Rome, 47 M.J. at 469 (citation omitted); United States v. Lavender, 46 M.J. 485, 488 (C.A.A.F. 1997). Taken at face value, that statement could be construed to be at odds with the liberal grant mandate. The statement, however, is not a reflection of a legal doctrine expressing judicial reticence or disdain for the finding of implied bias. Instead, the statement reflects that where actual bias is found, a finding of implied bias would not be unusual, but where there is no finding of actual bias, implied bias must be independently established.

It follows that in the absence of actual bias, where a military judge considers a challenge based on implied bias, recognizes his duty to liberally grant defense challenges, and places his reasoning on the record, instances in which the military judge's exercise of discretion will be reversed will indeed be rare. In such circumstances, what might appear a close case on a cold appellate record, might not appear so close when presented from the vantage point of a military judge observing members in person and asking the critical questions

that might fill any implied bias gaps left by counsel.  On the other hand, we have not hesitated to find implied bias where warranted.  See e.g., Leonard, 63 M.J. at 403; United States v. Wiesen, 56 M.J. 172, 177 (C.A.A.F. 2001).

This is a close case, and there is no record that the military judge considered implied bias or the liberal grant mandate.  Thus, there is no record regarding whether, how, and with what nuance, the military judge applied the principles embodied in the implied bias doctrine.

On the one hand, Col J stated any number of times that he presumed Appellant was innocent and would look at the evidence objectively.  When pressed on these points, he stuck to his guns.  On paper, Col J's reference to his young daughters might suggest an emotive content to his answers that may have been less apparent in person.

On the other hand, Col J did not say that his beliefs about the appropriate sentence were limited to cases involving girls fifteen years and younger, as the lower court suggests.  He said that he would be "merciless" to someone he found guilty of raping a "young female."  When trial counsel sought to "rehabilitate" Col J regarding a possible inelastic attitude on sentencing, Col J agreed that Appellant was presumed innocent and that Col J would hold the Government to its burden of proof, but he also returned to his earlier theme.  Asked if he could

still view the evidence objectively, Col J volunteered his belief that rape was "as serious [an] offense as I can think of." When asked whether he could have an "elastic" view toward sentencing and consider the full range of sentences, Col J responded equivocally, saying "I believe I could." Again, he volunteered commentary about his "moral convictions" regarding the crime of rape. In this context, these statements dilute Col J's agreement that he would "consider the entire range of punishments" if the military judge directed him to do so "as a matter of law." His answers, taken together, create the perception that if Col J, the senior member of the panel, were convinced of Appellant's guilt he would favor the harshest sentence available, without regard to the other evidence.

Based on these factors and the record before this Court, we conclude that the military judge erred in denying the challenge for cause against Col J and abused his discretion by not applying the liberal grant mandate to the challenge. [2]

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed and the findings and sentence

---

[2] Although military or national security exigencies may create personnel circumstances relevant to the liberal grant analysis, there is no indication in the record that this was the reason for the military judge's denial of Appellant's challenge for cause.

are set aside.  The record of trial is returned to the Judge

Advocate General of the Navy.  A rehearing may be authorized.