UNITED STATES, Appellee

v.

Ahmed M. ELFAYOUMI, Sergeant
U.S. Army, Appellant

No. 07-0346

Crim. App. No. 20010415

United States Court of Appeals for the Armed Forces

Argued February 26, 2008

Decided June 4, 2008

BAKER, J., delivered the opinion of the Court, in which EFFRON, C.J., and STUCKY, J., joined. ERDMANN, J., filed a separate dissenting opinion in which RYAN, J., joined.

<u>Counsel</u>

For Appellant:  <u>Frank J. Spinner</u>, Esq. (argued); <u>Major Teresa L. Raymond</u> (on brief); <u>Major Sean F. Mangan</u> and <u>Captain Tyeshe Elizabeth Lowery</u>.

For Appellee:  <u>Captain Michael G. Pond</u> (argued); <u>Major Elizabeth G. Marotta</u> and <u>Captain Michael C. Friess</u> (on brief); <u>Captain Andrew C. Baum</u>.

Military Judge:  James L. Pohl

**<u>THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION</u>.**

United States v. Elfayoumi, No. 07-0346/AR

Judge BAKER delivered the opinion of the Court.

At a court-martial composed of members, Appellant was convicted, contrary to his pleas, of forcible sodomy, assault and battery upon a military prison guard and three specifications of indecent assault in violation of Articles 125, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 925, 928, 934 (2000), respectively. The adjudged and approved sentence included a dishonorable discharge, confinement for fifteen years, forfeiture of all pay and allowances, and reduction in grade to E-1. The United States Army Court of Criminal Appeals affirmed. United States v. Elfayoumi, No. ARMY 20010415 (A. Ct. Crim. App. Jan 18, 2007) (unpublished). The question presented is whether a member, having expressed a view that homosexuality and pornography were "morally wrong," should have been excused on the basis of implied bias. We conclude the military judge did not abuse his discretion in denying the challenge for cause and affirm.

BACKGROUND

During general voir dire Major (MAJ) G stated that he had moral and religious objections to homosexuality. In addition, during individual voir dire he responded to the military judge's questions in the following manner:

MJ:    Earlier you indicated you had some strong objections to homosexuality?

2

MEM:    That is correct, sir.

MJ:     Could you explain a little bit about that.

MEM:    I feel that it is morally wrong.  It is against what I believe as a Christian and I do have some strong opinions against it.

MJ:     You notice[] on the [charge sheet] that the word "homosexual" is not there?

MEM:    Yes, sir.

MJ:     But there are male on male sexual touchings alleged.[1]

MEM:    Yes, sir.

---

[1] The relevant portions of the offenses to which the military judge was referring read as follows:

Charge:  I  VIOLATION OF THE UCMJ, ARTICLE 125

SPECIFICATION:  In that [Appellant] . . . did . . . commit sodomy with Private Mark [H] by force and without the consent of the said Private Mark [H].

    . . . .

Charge:  III  VIOLATION OF THE UCMJ, ARTICLE 134

SPECIFICATION 1:  In that [Appellant] . . . did . . . commit an indecent assault upon Alexander [G] . . . by rubbing his hand against the leg and private parts of Alexander [G] . . . .

    . . . .

SPECIFICATION 3:  In that [Appellant] . . . did . . . commit an indecent assault upon Charles [N] . . . by massaging his shoulders and attempting to massage his groin area . . . .

SPECIFICATION 4:  In that [Appellant] . . . did . . . commit an indecent assault upon Keith [B] . . . by placing his hand on Keith [B]'s inner thigh . . . .

MJ:     Do you think, with your moral beliefs that you can fairly evaluate the evidence of this case given the nature of the allegations?

MEM:    Yes, sir.

MJ:     Let's say we get to sentencing and the accused is convicted of some or all of the [offenses] . . . . Let's talk about these offenses involving indecent assault and the forcible sodomy. If it got to that point in the trial and the accused was convicted of some or all of those offenses, do you think you could fairly consider the full range of punishments?

MEM:    Yes, sir.

MJ:     Do you think you could honestly consider not discharging the accused even with that kind of conviction?

MEM:    I would have a hard time with that, sir.

MJ:     Could you consider it though?

MEM:    Yes, sir.

MJ:     After hearing the entire case, you wouldn't [categorically] exclude that?

MEM:    No, sir.

MJ:     Now understanding there may be administrative[] consequences and we all know those, but as a court member, that's not your concern. Do you understand that?

MEM:    Yes, sir.

On the question of pornography, MAJ G responded:

[DC:]    In response to one of the questions, you stated that you had a moral aversion to pornography.

[Mem:]   Yes, I believe it is wrong also.

> [DC:]    Would you consider someone who possessed or used pornography more likely to commit an immoral act . . . just because they have possessed that?
>
> [MEM:]   No.
>
> [DC:]    What about an act that you might perceive to be sexually immoral?
>
> {MEM:]   If I knew someone who watched pornography, are they more apt to do a sexual act that I consider to be immoral?
>
> [DC:]    Yes, sir.
>
> [MEM:]   Does that make them immoral, no.

Based on these responses, Appellant argues that MAJ G should have been removed for cause based on implied bias. According to Appellant, "[r]egardless of the court member responses in this case, there is a widespread view" among the public that the military, generally, is biased against homosexuals serving in the military. According to Appellant, it follows that when a member expresses strongly held views against homosexuality in a case where "the evidence is so closely connected to allegations of homosexual behavior," it puts "too much of a strain on the military justice system" to allow such a member to sit. With respect to MAJ G's views on pornography, Appellant argues, MAJ G exhibited an inelastic attitude, which prejudged the punitive outcome.

United States v. Elfayoumi, No. 07-0346/AR

## DISCUSSION

"'As a matter of due process, an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel.'" United States v. Downing, 56 M.J. 419, 421 (C.A.A.F. 2002) (citation omitted); United States v. Moreno, 63 M.J. 129, 132 (C.A.A.F. 2006). Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) requires an excusal for cause where it appears an individual "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." This rule encompasses challenges based upon both actual and implied bias. United States v. Clay, 64 M.J. 274, 276 (C.A.A.F. 2007); see United States v. Ai, 49 M.J. 1, 4-5 (C.A.A.F. 1998). Implied bias exists when most people in the same position as the court member would be prejudiced. United States v. Napolitano, 53 M.J. 162, 167 (C.A.A.F. 2000); United States v. Warden, 51 M.J. 78, 81 (C.A.A.F. 1999); United States v. Daulton, 45 M.J. 212, 217 (C.A.A.F. 1996). To test whether there is substantial doubt about the fairness of the trial, we evaluate implied bias objectively, "'through the eyes of the public,'" reviewing "'the perception or appearance of fairness of the military justice system.'" United States v. Townsend, 65 M.J. 460, 463 (C.A.A.F. 2008) (quoting United States v. Schlamer, 52 M.J. 80, 92-93 (C.A.A.F. 1999); United States v. Dale, 42 M.J. 384, 386

6

(C.A.A.F. 1995)).  This review is based on the "totality of the circumstances."  United States v. Terry, 64 M.J. 295, 302 (C.A.A.F. 2007) (citation and quotation marks omitted).  Although we review issues of implied bias for an abuse of discretion, because we apply an objective test, we apply a less deferential standard than we would when reviewing a claim of actual bias.  United States v. Armstrong, 54 M.J. 51, 54 (C.A.A.F. 2000); United States v. Napoleon, 46 M.J. 279, 283 (C.A.A.F. 1997).

As Appellant notes, the question of homosexuality and military service may evoke strongly held moral, legal, and religious views.  The range and depth of these views is reflected in debate over those personnel policies identified by the rubric "Don't Ask, Don't Tell."  These personnel policies, like the military criminal code, are set in law by the political branches -- the Congress and the Executive.

The duty of judges is to uphold the law in constitutional context.  This includes the constitutional and statutory duty to ensure that an accused receives a fair trial.  That means, among other things, that where a court-martial is conducted with members, deliberations will be based on the four corners of the law and not the personal views of members.  To accomplish this end, the military judge has a number of tools, including the

authority to oversee and conduct voir dire and to instruct members on the law and their deliberations.

In this case, the military judge used those tools. Faced with MAJ G's initial statements expressing a moral and religious objection to homosexuality as well as pornography, the military judge tested for personal bias that might manifest itself during the members' deliberations, regardless of the military judge's instructions on the law. Among other things, the military judge disaggregated the question of homosexuality from the charged criminal conduct at issue -- forcible sodomy. The military judge also permitted defense counsel to question MAJ G and did not restrict that questioning. MAJ G's answers to defense counsel's questions about his views on pornography revealed that MAJ G could distinguish between that which he might find immoral and that which the law might deem criminal. Further, defense counsel was permitted to ask questions, and there is no indication that defense counsel was precluded from asking any additional questions.

As a general matter, moral or religious views are not per se disqualifying where a member otherwise demonstrates a capacity to hear a case based on the four corners of the law and as instructed by the military judge. But recognizing the human condition, the law gives a military judge the added flexibility, and duty, to err on the side of caution where there is

substantial doubt as to the fairness of having a member sit. Thus, the military judge need not impugn the integrity or values of a member in finding actual bias, but can in context rely on the implied bias/liberal grant doctrine if substantial doubt arises that a member can put his or her views aside.

It would not be unusual for members to have strongly held views about lawful conduct involving sex or pornography. Indeed, in today's society it will be hard to find a member who does not hold such views, one way or another. So too, a member might have a strongly held view about unlawful conduct -- murder, shoplifting, forcible sodomy, etc. We expect that most, if not all members, would. Also, we surmise that most members would have a natural propensity to be either lenient or punitive depending on their personal views on these subjects. The law anticipates this human condition. Thus, the question is not whether they have views about certain kinds of conduct and inclinations regarding punishment, but whether they can put their views aside and judge each particular case on its own merits and the law, such that appellate courts, in applying R.C.M. 912, are not left in substantial doubt as to the fairness or impartiality of the members. Here, because the military judge specifically questioned MAJ G on his ability to separate his personal views from the facts of the case, and in light of

MAJ G's responses, we conclude that the military judge did not abuse his discretion in denying the challenge for cause.

DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.

United States v. Elfayoumi, No. 07-0346/AR

ERDMANN, Judge, with whom RYAN, Judge, joins (dissenting):

Rule for Courts-Martial (R.C.M.) 912 encompasses challenges based upon both actual bias and implied bias. United States v. Clay, 64 M.J. 274, 276 (C.A.A.F. 2007); United States v. Ai, 49 M.J. 1, 4-5 (C.A.A.F. 1998). R.C.M. 912(f)(1)(N) provides a challenge for implied bias where it appears an individual "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." The focus of a challenge for implied bias is upon "the perception or appearance of fairness of the military justice system" as viewed objectively "through the eyes of the public." United States v. Schlamer, 52 M.J. 80, 93 (C.A.A.F. 1999) (citations and quotation marks omitted); United States v. Dale, 42 M.J. 384, 386 (C.A.A.F. 1995). As I noted in United States v. Townsend, 65 M.J. 460, 463 (C.A.A.F. 2008): "Our inquiry is to determine whether the risk that the public will perceive that the accused received something less than a court of fair, impartial members is too high." I conclude that a reasonable member of the public would have serious doubts about the fairness of Elfayoumi's trial with Major (MAJ) G sitting on the panel.

Religious, moral, and personal beliefs are relevant considerations in determining whether an individual should serve as a juror or court member. "The right to examine jurors on the

voir dire as to the existence of a disqualifying state of mind, has been upheld . . . in relation to religious and other prejudices of a serious character." Aldridge v. United States, 283 U.S. 308, 313 (1931). If moral or religious principles are so strong that they will not yield and permit a potential member to adjudicate the case without violating those principles, there is cause to excuse that member. See United States v. Decoud, 456 F.3d 996, 1017 (9th Cir. 2006); United States v. Geffrard, 87 F.3d 448, 451-52 (11th Cir. 1996); United States v. Hoffman, 806 F.2d 703, 705 (7th Cir. 1986). It follows that if moral or religious conviction can serve to disqualify a member, those same traits can also create a perception of unfairness in the eyes of the public when those traits may prejudice a member's adjudication of the case or that member's view of the accused.

The charges in this case and the evidence ultimately presented leave no question that homosexual conduct and pornography were at the core of the case. MAJ G left no doubt about his views and aversions to both. He stated without qualification that: he had "religious or other strong objections to homosexuality"; he had a "religious or moral aversion to pornography"; he felt that "a person who possesses pornographic material is immoral"; he had "Christian" feelings that homosexuality was morally wrong; he held strong opinions against homosexuality; he would have a "hard time" not

considering a discharge on sentencing; and he believed pornography was "wrong." In light of these unwavering responses, a reasonable observer could conclude that MAJ G's "strong," "moral" and "Christian" beliefs would influence his adjudication of the offenses and his perception of Elfayoumi who: inferentially was homosexual; rented and viewed pornographic materials; touched another male while viewing pornography; indecently touched three other males at distinct times; and committed forcible sodomy upon a male who refused his sexual advances.

The military judge did engage MAJ G in questioning about his beliefs and convictions and he did obtain an assurance from MAJ G that he could follow the law as given by the military judge. However, review for implied bias is undertaken "despite a disclaimer." Townsend, 65 M.J. at 463. In addition, the military judge's ruling does not reflect that he considered the liberal grant mandate. Where a military judge does not indicate on the record that he has considered the liberal grant mandate in ruling on a challenge, we will accord that decision less deference during our review of the ruling. See Clay, 64 M.J. at 277; United States v. Hollings, 65 M.J. 116, 119 (C.A.A.F. 2007); United States v. Terry, 64 M.J. 295, 296 (C.A.A.F. 2007).

Under the circumstances of this case, I conclude there was a substantial risk that the public would feel that this trial

3

was not conducted with a fair and impartial panel.  This is the type of case in which the military judge should have applied the liberal grant mandate and utilized the "added flexibility, and duty, to err on the side of caution where there is substantial doubt as to the fairness of having [MAJ G] sit."  United States v. Elfayoumi, __ M.J. __ (8-9) (C.A.A.F. 2008).  I therefore dissent.