**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Staff Sergeant WILLIAM J. MATTHIS**
**United States Air Force**

**ACM 38312**

**14 August 2014**

Sentence adjudged 14 December 2012 by GCM convened at Joint Base Charleston, South Carolina. Military Judge: Michael J. Coco.

Approved Sentence: Bad-conduct discharge, confinement for 9 months, and reduction to E-3.

Appellate Counsel for the Appellant: Captain Michael A. Schrama.

Appellate Counsel for the United States: Lieutenant Colonel Katherine E. Oler; Lieutenant Colonel C. Taylor Smith; Captain Thomas J. Alford; and Gerald R. Bruce, Esquire.

Before

HECKER, SANTORO, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

SANTORO, Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of one specification of assault consummated by a battery for striking his 10-year-old stepson's buttocks, legs, and back with a belt; three specifications of assault consummated by a battery for striking and choking his wife, pushing her into a wall, and grabbing her arm and pinning it between a door and door frame; and one specification of service discrediting conduct for endangering the mental health of his stepson, in violation of Articles 128 and 134, UCMJ, 10 U.S.C. §§ 928, 934. He was acquitted of three additional specifications alleging assault consummated by a battery upon that stepson and another stepson and of communicating a

threat to his wife. The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 9 months, and reduction to E-3. Before us, the appellant asserts: (1) his sentence is inappropriately severe, (2) the military judge erroneously denied a challenge for cause, (3) his trial defense counsel were ineffective, and (4) cumulative error calls into question the fairness of his trial.[1] We disagree and affirm.

*Background*

The appellant and his wife, CM, met and began dating in 2006, and they married in 2007. CM brought with her into the relationship two sons and a daughter, who at the time were ages 5, 4, and 1. At the time of trial in 2012, the children were ages 12, 11, and 7.

CM testified that the appellant was a "nice person" when the relationship began but quickly became controlling and violent, and drank to excess. Although CM was the children's primary caregiver, the appellant was the disciplinarian. He would "ground" the children for what CM perceived to be trivial reasons such as spilling things on the floor. When grounded, the children were required to go to their rooms and be on the bed for the duration of the punishment. The appellant spanked the children with his belt, also for what CM believed were insignificant transgressions. Groundings were normally accompanied by spankings with the belt. CM several times told the appellant that she felt the groundings and belt spankings were both too harsh and ineffective. The appellant told her he was not going to stop.

During a family gathering, the appellant's mother saw bruises on the children and told the appellant to stop punishing them so harshly. On another occasion, after the appellant had spanked one of the children, CM threatened to report him to his first sergeant. According to CM, the appellant replied that she could do that if she wanted but the military would take her children away from her and throw her out of base housing.

IM was the middle child and had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). Although CM described IM as a "pretty good kid," he tended to be more impulsive and difficult to parent than the others. The appellant repeatedly called IM stupid and a "retard" and punished him more harshly and more frequently than the other children.

One weekend in March 2012, IM was in his bedroom and called out to CM, saying his legs were hurting. When she asked what he was talking about, IM said, "From daddy spanking me." CM saw welts on her son's legs and decided then that she was going to report the abuse. She took a photograph of the bruises and went to the appellant's first sergeant the next duty day.

---

[1] The third and fourth issues are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

CM and each of her three children testified at trial, as did law enforcement and medical experts. The appellant was ultimately convicted of striking IM on his buttocks and leg with his belt during the incident that precipitated the report to the first sergeant. He was also convicted of striking CM's head, choking her, pushing her into a wall, and grabbing her arm and pinning it between a door and the door frame, during various incidents occurring between 2008 and 2011. He was additionally convicted of endangering the mental health of IM by screaming at him, calling him names, and ordering that he be confined to bed for lengthy periods of time between 2010 and 2012.

*Sentence Appropriateness*

This Court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006); *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We assess sentence appropriateness by considering the appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (C.A.A.F. 2007).

While we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988). Moreover, while we are required to examine sentence disparities in closely related cases, we are not required to do so in other cases. *United States v. Christian*, 63 M.J. 714, 717 (A.F. Ct. Crim. App. 2006) (citing *United States v. Wacha*, 55 M.J. 266, 267–68 (C.A.A.F. 2001)).

The maximum sentence which could be imposed for the appellant's offenses was a dishonorable discharge, confinement for 4 years and 6 months, and reduction to E-1. The approved sentence of a bad-conduct discharge, confinement for 9 months, and reduction to E-3 was clearly within the discretion of the convening authority. While the appellant urges us to look at the strength of his military career, which we have done, we cannot ignore the violent and repeated nature of his offenses—especially when committed against those who looked to him for support and safety. Accordingly, we hold that the approved sentence is not inappropriately severe for a noncommissioned officer who physically abused his special-needs stepson and his wife on multiple occasions.

ACM 38312

Next, the appellant argues that the military judge erroneously denied a challenge for cause against Lieutenant Colonel (Lt Col) MP, arguing that his answers about corporal punishment in group and individual voir dire suggested both actual and implied bias.

Trial defense counsel asked the following question during group voir dire: "Does anyone have a problem—people have different feelings about what corporal punishment means. Does anyone have a problem with corporal punishment or a negative feeling about it or think it should be outlawed if the parent uses a belt as the implement of corporal punishment?" Several members, including Lt Col MP, responded in the affirmative.

During individual questioning, Lt Col MP and trial counsel engaged in the following dialogue:

STC: Sir, I believe you also said that you believe that it should be a crime to use a belt to punish a child.

[LT COL MP]: No, I think the question wasn't necessarily a crime but did I have issue with it and I do. I think anything besides a hand, me personally, I believe that's too much but not necessarily a crime by definition. I would have to read the definition of what a crime is to make that assessment.

STC: If the military judge gave you an instruction as to what constituted corporal punishment or what constituted a crime in this case would you have any problem following that instruction as given to you by the military judge?

[LT COL MP]: None.

STC: If that definition allowed for the use of a belt as being a non-criminal action would you have any problem following the definition?

[LT COL MP]: I would have no problem following the definition.

STC: Thank you, sir. Sir, did you also answer affirmatively that you had a negative experience with corporal punishment?

[LT COL MP]: I did not, not that I recall.

ACM 38312

STC: Okay. Yes, sir, there were a lot of questions and I just wanted to make sure I capture what you said correctly. It must've been a negative feeling towards corporal punishment. Is that possible?

[LT COL MP]: No, only a negative feeling towards using anything besides a hand to inflict that corporal punishment.

Although given the opportunity, trial defense counsel did not further question Lt Col MP on this issue.

In denying the defense challenge for cause, the military judge stated:

On the issue of the belt, [Lt Col MP] did state that he had an issue with using a belt, that he personally believed it was too much but he would have to read the definition to decide if it was a crime or not. He would have no problem following the definitions. Given his answers and the demeanor that I witnessed of him I have considered – I find no actual bias, I find no implied bias and even given the liberal grant mandate, as there is no bias, just because he personally does not believe in using a belt he does not automatically find it a crime and that challenge is denied.

Rule for Court-Martial (R.C.M.) 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears that the member should not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality. This rule encompasses challenges based upon both actual and implied bias. *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008) (citing *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)).

The test for actual bias is "whether any bias is such that it will not yield to the evidence presented and the judge's instructions." *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007) (quoting *United States v. Napoleon*, 46 M.J. 279, 283 (C.A.A.F. 1997)) (internal quotation marks omitted). Because the existence of actual bias is a question of fact, we provide the military judge with significant latitude in determining whether it is present in a prospective member. *Id.* (citing *United States v. Warden*, 51 M.J. 78, 81 (C.A.A.F. 1999)). Actual bias is reviewed "subjectively, through the eyes of the military judge or the court members." *Warden*, 51 M.J. at 81 (quoting *Napoleon*, 46 M.J. at 283) (internal quotation marks omitted). A challenge based on actual bias is essentially one of credibility, and because the military judge has an opportunity to observe the demeanor of court members and assess their credibility on voir dire, a military judge's ruling on actual bias is afforded deference. *United States v. Briggs*,

64 M.J. 285, 286 (C.A.A.F. 2007) (citing *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996)).

The test for assessing an R.C.M. 912(f)(1)(N) challenge for implied bias is "objective, viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *Clay*, 64 M.J. at 276) (internal quotation marks omitted). The hypothetical public is assumed to be familiar with the military justice system. *Id.* (citing *United States v. Downing*, 56 M.J. 419, 423 (C.A.A.F. 2002)). We review issues of implied bias under a standard less deferential than abuse of discretion, but more deferential than de novo. *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004) (citing *United States v. Miles*, 58 M.J. 192, 195 (C.A.A.F. 2003)). "[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate." *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993). "The liberal grant mandate recognizes the unique nature of military courts-martial panels, particularly that those bodies are detailed by convening authorities and that the accused has only one peremptory challenge." *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006) (citing *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005)).

The military judge did not abuse his discretion in denying the challenge for cause against Lt Col MP on the basis of actual bias. Lt Col MP stated that he could follow the military judge's instructions and the judge found that assertion to be credible. Likewise, we discern no error in the military judge's denial of the challenge on an implied bias theory. The trial defense counsel's question that triggered individual questioning was actually three questions wrapped into one. The member's initial affirmative response did not indicate which of trial defense counsel's three questions he was answering. During individual questioning, Lt Col MP clarified that his personal limit on corporal punishment was using a hand, but stated he had not concluded that use of a belt was a crime and that he would follow the military judge's instructions on the law. Even applying the liberal grant mandate, we reject this assignment of error.

*Ineffective Assistance of Counsel*

The appellant alleges that his trial defense counsel were ineffective by (1) failing to call two witnesses whom he believed would offer negative testimony about his wife; (2) not properly cross-examining another witness regarding the nature of the witness's relationship with the appellant's wife; (3) failing to cross-examine his wife on the details of her other relationships; (4) failing to highlight perceived lies during the testimony of a witness; and (5) having lunch with trial counsel. We ordered the submission of affidavits from both trial defense counsel. Having reviewed the appellant's and counsel's affidavits, we conclude that we need not order additional fact-finding to resolve the assigned error. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

ACM 38312

We review claims of ineffective assistance of counsel de novo. *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). To establish ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The deficiency prong requires an appellant to show the performance of counsel fell below an objective standard of reasonableness, according to the prevailing standards of the profession. *Strickland*, 466 U.S. at 688. The prejudice prong requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

We have fully examined the appellant's assertions and trial defense counsel's responses. The vast majority of the questions the appellant wishes his counsel had asked at trial would have been irrelevant or impermissible under the Military Rules of Evidence. While some of the appellant's desired questioning would have been permissible under the rules, his trial defense counsel pointed out that the appellant had no proof of any alleged prior activities that could overcome the witnesses' expected denials. Similarly, in his affidavit before us, the appellant also offers no proof of these assertions. We conclude that trial defense counsel had sound tactical reasons for each of the decisions appellant challenges. This assignment of error is therefore without merit. *See United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001) (observing that the Court "will not second-guess the strategic or tactical decisions made at trial by defense counsel").

*Cumulative Error*

Finally, the appellant contends that even if none of his multiple assignments of error entitle him to relief, he is nevertheless entitled to relief under the cumulative error doctrine. We review such claims de novo. *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011). Under the cumulative error doctrine, "a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate the disapproval of a finding." *Id*. (quoting *United States v. Banks*, 36 M.J. 150, 170–71 (C.M.A. 1992)). As we have found no merit in any of the appellant's assigned errors, the cumulative error doctrine provides the appellant with no basis for relief. *See United States v. Gray*, 51 M.J. 1, 61 (C.A.A.F. 1999) ("Assertions of error without merit are not sufficient to invoke this doctrine.").

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

ACM 38312

Accordingly, the approved findings and the sentence are

AFFIRMED.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38312