# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Airman First Class ROBERT L. ANDERSEN JR.
### United States Air Force

### ACM 38466

### 02 February 2015

Sentence adjudged 31 May 2013 by GCM convened at Sheppard Air Force Base, Texas. Military Judge: J. Wesley Moore.

Approved Sentence: Dishonorable discharge, confinement for 5 years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

Appellate Counsel for the Appellant: Major Nicholas D. Carter and Daniel Conway, Esquire.

Appellate Counsel for the United States: Major Daniel J. Breen; Major Roberto Ramírez; and Gerald R. Bruce, Esquire.

Before

MITCHELL, SANTORO, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of the attempted forcible sodomy and rape of an Airman Basic, in violation of Articles 80 and 120,[1] UCMJ, 10 U.S.C. §§ 880, 934. He was found not

---

[1] The charged events took place on 8 June 2012, meaning the appellant was charged and convicted under the version of Article 120, UCMJ, 10 U.S.C. § 920, which applies to offenses committed between 1 October 2007 through 27 June 2012. *See Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 45 (2012 ed.); *MCM*, app. 28.

guilty of forcibly sodomizing the Airman Basic on the same occasion pursuant to Article 125, UCMJ, 10 U.S.C. § 925. The adjudged and approved sentence was a dishonorable discharge, confinement for 5 years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

Before us, the appellant asserts: (1) the military judge abused his discretion in denying a challenge for cause against Captain (Capt) BK, (2) the evidence of attempted forcible sodomy and rape is factually insufficient, (3) comments by the Commander in Chief and other senior leaders constituted unlawful command influence (UCI), and (4) the military judge erred in his findings instructions to the members. We disagree and affirm.

*Background*

In June 2012, the appellant and the victim were attending technical training at Sheppard Air Force Base, Texas. They were in different squadrons and although they knew each other, they did not have a romantic or other close relationship.

On 8 June 2012, after their squadrons had been released for the weekend, the victim went to the mini-mall on base. The appellant and several of his friends were also at one of the mini-mall concessionaires drinking beer. After a time, the victim noticed the group and joined them. She began drinking and estimated that she had two large beers that may have totaled 48 ounces or more.

The victim had planned to spend that evening with Airman First Class (A1C) BB watching movies. However, by the time A1C BB arrived, the victim decided she wanted to go to dinner with the appellant and the other Airmen with whom she had been drinking. A1C BB joined the group for dinner.

In the cab on the way to dinner, the appellant sat next to the victim and, while engaged in conversation with the others, put his arm around her shoulders. The appellant seated himself next to the victim at the restaurant. Other than A1C BB, who was underage at the time, the entire group continued drinking. During dinner, the appellant engaged in what both the victim and A1C BB took as inappropriate physical contact: he put his hand on the victim's hand, which was resting on her leg, and later put his hand on her leg toward the top of her thigh. In response, A1C BB confronted the appellant and reminded him that he (the appellant) was married.

The group took a cab back to the base when dinner was finished. By this point, A1C BB had left the group. The victim, although describing herself as highly intoxicated, decided to go to an on-base park to socialize with members of her brother-flight. The appellant also went to the park. After socializing for a period of time,

the victim told the appellant she was feeling sick and dizzy and was going to return to her squadron.

The appellant followed her. As they approached the victim's dormitory, the appellant suggested that she walk around to allow the alcohol to wear off before she walked into the building and past the charge of quarters on duty. The victim agreed, and they continued walking again.

The victim testified that as they approached another building, the appellant tried to kiss her. She reminded him that he was married, turned her head, put her hands between them, and told him "no." The appellant pulled the drunk victim to the ground and put all of his weight on top of her. The victim tried to move her arms and kicked at the ground to get out from underneath him but was unable to get away.

The appellant pulled the victim's leggings down and told her to "shut up and be quiet," as she cried and told him "no." He unzipped his own pants and had sexual intercourse with her while she continued to protest. As he had sex with her, the appellant repeatedly asked her to tell him she loved him. She did not do so.

She passed out while his penis was still inside her. When she came to, he was pulling at her hair, trying to bring her head to his waist and his exposed penis. He told her repeatedly, "You're going to go down on me." The victim was able to push him away and get up on one knee, but he pushed her to the ground again. She was eventually able to kick him and get away.

The victim remained in the area and passed out again. She was found the next morning by a member of the Army who woke her up and told her the police had been called. The victim made her way to the dining facility where she was found crying in the bathroom. She initially denied that she had been assaulted. Later that day, A1C BB suggested she contact the Sexual Assault Response Coordinator (SARC) and go to the hospital, which she eventually did.

During the investigation that ensued, the appellant first denied any sexual contact occurred between himself and the victim, before stating they had consensual sexual intercourse. He described the incident as "two adults" who both got "entirely too drunk." The appellant also stated he was the victim of any sexual activity that took place, describing his memories of the evening as "nightmares" in which the victim was performing oral sex on him, which he said angered and offended him, but which he was too intoxicated to stop.

The Government also introduced the testimony of other Airmen present at the mini-mall, the restaurant, and the park that corroborated various aspects of the victim's recollection of events. The soldier who found the victim passed out after the assault

testified that as he tried to wake her, the victim said, "Oh, this isn't going to happen," and, "You're not going to do it again."

Additional facts necessary to resolve the assignments of error are included below.

*Challenge for Cause*

In his first assignment of error, the appellant argues that the military judge erred in denying his challenge for cause against Capt BK under an implied bias theory. Implied bias is "viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)) (internal quotation marks omitted). Therefore, appellate courts employ an objective standard when reviewing a military judge's decision regarding implied bias. *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004). We review issues of implied bias under a standard less deferential than abuse of discretion but more deferential than de novo. *Id*. (citing *United States v. Miles*, 58 M.J. 192, 195 (C.A.A.F. 2003)). In reviewing challenges for cause under the implied bias standard, military judges are required to follow the "liberal grant" mandate which "supports the UCMJ's interest in ensuring that members of the military have their guilt or innocence determined 'by a jury composed of individuals with a fair and open mind.'" *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005) (quoting *United States v. Smart*, 21 M.J. 15, 18 (C.M.A. 1985)). "[I]n the absence of actual bias, where a military judge considers a challenge based on implied bias, recognizes his duty to liberally grant defense challenges, and places his reasoning on the record, instances in which the military judge's exercise of discretion will be reversed will indeed be rare." *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007).

The issue of Capt BK's excusal arose not during the initial questioning of members prior to presentation of evidence but rather toward the end of the victim's direct testimony. Capt BK, a dentist, remembered previously treating the victim, reviewing the information she provided regarding her medical history relevant to seeking dental care, and was aware that she had a pending medical retirement.[2] Capt BK stated that "there wasn't anything that we really conversed concerning the case or surrounding the case as far as that goes." Capt BK remembered that they briefly discussed skateboarding and that the victim was quiet and shy.

---

[2] The record indicates that during the course of treating the victim, Captain (Capt) BK determined the victim had some dental problems that would require long term treatment. As part of the routine process of providing care to Airmen in student status, Capt BK asked her if she would be at Sheppard Air Force Base long enough to complete the treatment. The victim replied that she was being medically retired. Capt BK said that other than her brief statement, he did not "remember anything particular to the situation." Capt BK confirmed that he did not have any knowledge as to the basis for the medical retirement.

Trial defense counsel argued that Capt BK should be excused because (1) he recognized the victim as a former patient, (2) he remembered her because of her quiet demeanor, (3) he had access to her medical records, and (4) he had knowledge of her medical retirement and its relationship to potential sentencing evidence should there be a conviction. The Government objected, arguing that Capt BK assured the military judge he could remain impartial and that Capt BK's recollection of the victim, and his immediately bringing it to the military judge's attention, fostered the appearance of fairness rather than undercut it.

The military judge denied the challenge, stating:

> I've gone back and reviewed my notes of Captain [BK's] initial voir dire, as well as considering everything that he just brought to light. In light of that, I will deny the challenge for cause against Captain [BK]. Having personally observed his demeanor, I think trial counsel makes a good point that he not only brought this to our attention at the first opportunity, but also promised that if he were to have any concerns as we go forward that he would bring those to our attention.
>
> I have no reason to doubt that he will do precisely that if he feels like he's had some memory jarred that would affect his impartiality. So even considering the liberal grant mandate and the implied bias standard, basically, I believe Captain [BK] has comported himself as precisely the type of individual possessed of just the type of judicial temperament we would want of a member in a court-martial of the seriousness of this; and so the request that he be excused is denied.

The military judge considered the challenge based upon implied bias, recognized his duty to grant liberally defense challenges, and placed his reasoning on the record. We see no reason to believe that merely because Capt BK remembered providing unrelated dental care to the victim and knew she had a pending medical retirement, he was either actually biased or might appear so. Capt BK brought this matter forward on his own accord, had minimal knowledge about the victim, and assured the military judge that nothing about his brief interaction with the victim would cause him any concern about his ability to decide this case impartially.

The appellant now argues that the military judge's earlier granting of a challenge for cause against a member with "a lesser justification" means the military judge's denial of the challenge against Capt BK must necessarily constitute an abuse of discretion.

The military judge made a clear distinction between the two members. In granting the defense challenge for cause against Capt GW, the military judge stated he did not find actual bias but under the liberal grant mandate he was granting the challenge for cause for implied bias because Captain GW's answers were inconclusive on whether he would show a preference or "head start" to witnesses with whom he previously interacted.

The military judge clearly understood the distinction between actual bias and implied bias, as well as his responsibility to grant challenges for cause liberally. Contrary to the appellant's assertion on appeal, the military judge's ruling with respect to the challenge against Capt GW makes us more confident, rather than less confident, that the military judge properly analyzed the challenge against Capt BK. This is therefore not one of the rare instances in which the military judge's exercise of discretion will be reversed. *See Clay*, 64 M.J. at 277.

*Factual Sufficiency*

The appellant next argues that the evidence is factually insufficient to sustain the convictions for attempted forcible sodomy and rape. We review claims of factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are convinced of appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Bethea*, 46 C.M.R. 223, 224–25 (C.M.A. 1973).

The elements of attempted forcible sodomy required that the Government prove that at the time and place alleged, the appellant tried to place his penis in the victim's mouth, that he did so with the specific intent to commit forcible sodomy, that the act was a substantial step toward the commission of the offense of forcible sodomy, and that the act would have caused forcible sodomy to occur but for an unexpected intervening circumstance.

The elements of rape required that the Government prove that at the time and place alleged, the appellant caused the victim to engage in a sexual act (i.e., sexual intercourse) and that he did so by using sufficient force against her that she could not avoid or escape the sexual act.

As he did at trial, the appellant argues before us that any sexual activity that occurred between the appellant and the victim was consensual. In support of his position, the appellant calls our attention to the evidence of the victim's intoxication—or lack

thereof—during the evening, her history of having made prior false and/or inconsistent statements, her possible motives to fabricate, her statements to and conduct with the appellant, and other possible implausibilities or inconsistencies in the evidence.

We have reviewed the record of trial, paying particular attention to the evidence and reasonable inferences that can be drawn therefrom, including the text messages between the victim and the appellant on the night of the incident. We conclude, as did the members, that the sexual conduct was not consensual and that the appellant did not mistakenly believe that the victim consented. The victim maintained a consistent, credible account of what occurred on the night in question. We see no reason to believe the victim might have consented to the sexual conduct, and the appellant's shifting accounts during his law enforcement interview further solidify the prosecution's case. Having reviewed the entire record and making allowances for not personally observing the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt.[3]

*Unlawful Command Influence*

The appellant next alleges that apparent UCI so permeated the Air Force at the time of his trial that it was impossible for him to receive a fair trial or clemency consideration. The appellant asked the military judge to dismiss all charges on this same basis. The military judge denied the motion.

According to the appellant, it was impossible for him to receive a fair trial or post-trial processing due to the cumulative effect of comments made by the President of the United States, the Chief of Staff of the Air Force, the former and current Secretaries of Defense, and other senior military leaders.

Article 37(a), UCMJ, 10 U.S.C. § 837(a), states in relevant part: "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." The mere appearance of unlawful command influence may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (quoting *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)) (internal quotation marks omitted).

---

[3] Although not raised by the appellant, we also consider the issue of legal sufficiency. "The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)) (internal quotation marks omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001). For the reasons set forth in the opinion, we find the evidence is legally sufficient.

The burden of raising the issue of UCI rests with trial defense counsel. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). The defense must: (1) "show facts which, if true, constitute unlawful command influence," and (2) show "the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings." *Id.* To meet the threshold for raising this issue, trial defense counsel is required to present "some evidence" of unlawful command influence. *Id.* If the defense meets that burden to raise the issue, the burden shifts to the Government, who must: "(1) disprove the predicate facts on which the allegation of unlawful command influence is based; (2) persuade the military judge that the facts do not constitute unlawful command influence; or (3) prove at trial that the unlawful command influence will not affect the proceedings." *United States v. Simpson*, 58 M.J. 368, 373 (C.A.A.F. 2003) (quoting *Biagase*, 50 M.J. at 151) (internal quotation marks omitted). "Whichever tactic the Government chooses, the quantum of proof is beyond a reasonable doubt." *Id.* (quoting *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)) (internal quotation marks omitted).

Where, as here, the issue is litigated on the record at trial, the military judge's findings of fact are reviewed under a clearly erroneous standard, but the question of UCI flowing from those facts is a question of law that this court reviews de novo. *United States v. Villareal*, 52 M.J. 27, 30 (C.A.A.F. 1999).

The appellant's argument at trial was focused on various comments by officials including the President of the United States, the Secretary of Defense, and other Air Force senior leaders. Notably, none of the comments at issue were made by anyone directly involved in the appellant's court-martial. The military judge initially ruled that the defense had failed to meet its burden to establish facts which, if true, amounted to UCI. Instead, he treated the issue as one of pretrial publicity to be handled during the voir dire process. The military judge further noted that he would apply the actual and implied bias standards and the liberal grant mandate when ruling on challenges for cause.

At the conclusion of voir dire, the military judge revisited the issue of command influence. He stated:

> I do hereby find, beyond a reasonable doubt, that the panel as currently composed, has shown absolutely no evidence that they have been adversely impacted by the President's or the [Secretary of Defense]'s or any other entity's statements or any of the actions which took place with [two Air Force general officers whose actions as convening authority in sexual assault cases had been questioned]. Basically, beyond any reasonable doubt, I find that the panel as currently constituted shows no impact from any command influence in this case, I so do find.

On appeal, the appellant does not challenge any of the military judge's findings of fact, including the finding beyond a reasonable doubt that there was no impact from any of the statements made by the senior officials. Instead, the appellant invites us to "consider all of the attachments to both the defense's motion to dismiss . . . and his clemency request," the latter of which largely contained the same information and argument as was in his motion to dismiss.

We have ourselves reviewed the entire record, including the comments made by the senior officials and the members' responses during the voir dire process. The military judge's findings of fact are amply supported by the record and are not clearly erroneous. We need not reach the question of whether the defense met its initial burden of production of evidence, as the military judge found beyond a reasonable doubt—and we agree—that the statements at issue had no impact on the appellant's trial. Additionally, the military judge allowed broad voir dire on this subject and voiced a willingness to liberally grant challenges to any member who might have been affected by any of the statements at issue. An objective, disinterested, reasonable member of the public, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the appellant's court-martial proceeding. *See United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F. 2006).

*Instructions*

The appellant also assigned as error that the military judge erred in the findings instructions he provided to the members.[4] We review de novo the military judge's instructions to ensure that they correctly address the issues raised by the evidence. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010); *United States v. Thomas*, 11 M.J. 315, 317 (C.M.A. 1981). Where, as here, trial defense counsel made no request for the instruction now at issue on appeal, the appellant has forfeited the objection in the absence of plain error. *See* Rule for Courts-Martial 920(f).[5] If we find error, we must determine whether the error was harmless beyond a reasonable doubt. *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F. 2011).

The appellant's brief alleges that the military judge erred in his instruction on the use of prior consistent statements. During deliberations, the members requested copies of

---

[4] The appellant's brief contains a significant scrivener's error in which he titled the assignment of error that the military judge failed to provide a definition for "wrongful" in Charge II. However, the charged offense of rape and the lesser included offense of aggravated sexual assault do not include the term "wrongful" in the elements or definitions. The military judge correctly did not include this term in his instructions on these offenses. The appellant's brief also does not present any argument on the issue of a definition of "wrongful." We need not spend any additional time, other than this brief footnote, on the assignment of error as captured in the title as that portion is clearly without any merit. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

[5] Although we recognize that the rule speaks of "waiver," the mere failure to object to instructions at trial normally constitutes forfeiture. *See United States v. Sousa*, 72 M.J. 643, 651–52 (A.F. Ct. Crim. App. 2013).

the victim's statement to investigators as well as testimony she gave at the Article 32, UCMJ, 10 U.S.C. § 832, pretrial investigation. The Government objected to the members' request. Trial defense counsel argued that the statements at issue *should* be provided to the members, stating, "They contain, you know, evidence of potentially inconsistent as well as consistent statements. And so we have no objection, Your Honor."

The military judge did as trial defense counsel asked and admitted the documents at issue. He then added a legally correct instruction on the use of a prior consistent statement to his previous instruction on the use of prior inconsistent statements. Despite having received exactly what he requested at trial, the appellant now complains the judge erred. Even assuming the appellant had not outright waived appellate review of this issue, we find no plain error in the military judge's actions.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).[6] Accordingly, the findings and the sentence, are **AFFIRMED**.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[6] We order corrective procedural measures. The appellant's brief includes the full name of the victim when quoting the military judge's ruling on the challenge of Capt BK. We order the appellant to produce a brief with the full name redacted and replaced with only the initials. The corrected brief will otherwise be identical and will be the only one placed in the record of trial. The appellant's counsel shall provide a corrected brief within 14 calendar days of this opinion. Additionally, the record of trial was not sealed for the closed sessions on the Mil. R. Evid. 412, 513, and 514 motions. Each of these rules clearly state that "[t]he motion, related papers, and the record of the hearing" *shall be sealed* and shall remain under seal unless ordered otherwise by a trial or appellate military judge. Mil. R. Evid. 412(c)(2), 513(e)(5), 514(e)(5) (emphasis added). No exception applies in this case, and we order these portions to be sealed immediately. Counsel for both sides shall ensure that any copies of the record of trial are corrected in accordance with the rules on sealed materials.