# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Airman First Class JOSHUA B. CHAPPELL-DENZER
### United States Air Force

### ACM 38498

### 5 June 2015

Sentence adjudged 23 August 2013 by GCM convened at Travis Air Force Base, California. Military Judge: W. Shane Cohen, William C. Muldoon.

Approved Sentence: Dishonorable discharge, confinement for 10 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis;

Appellate Counsel for the United States: Major Daniel J. Breen; Captain Thomas J. Alford; and Gerald R. Bruce, Esquire.

Before

MITCHELL, TELLER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

MITCHELL, Senior Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of rape, aggravated sexual assault, abusive sexual contact, forcible sodomy, and assault consummated by a battery, in violation of Articles 120, 125, and 128, UCMJ, 10 U.S.C. §§ 920, 925, 928. The adjudged and approved sentence consisted of a dishonorable discharge, confinement for 10 years, forfeiture of all pay and allowances, and reduction to E-1. Before us, the appellant asserts nine alleged errors: (1) the military judge erroneously denied two challenges for

cause, (2) the military judge abused his discretion in permitting the prosecution's expert witness to bolster the victim's testimony and profile the accused, (3) the military judge erred when he dismissed a member during deliberations on findings, (4) the military judge erred when he did not grant a mistrial after dismissing a member during deliberations, (5) the military judge abused his discretion by allowing trial counsel to testify during cross-examination of the appellant's expert witness during sentencing and then failed to instruct the members regarding trial counsel's statements, (6) trial counsel's sentencing argument was improper because it included facts not in evidence, (7) his trial defense counsel were ineffective by failing to prepare the expert witness, (8) his trial defense counsel were ineffective by failing to challenge the results of the Rule for Courts-Martial 706 (R.C.M.) inquiry, and (9) cumulative error calls into question the fairness of his trial.[1] We disagree and affirm.

*Background*

The appellant was a 23-year-old male with over three years' time in service. He met 19-year-old SrA MI while on duty at Travis Air Force Base, California, and they decided to date. Over the first week, they went on two dates involving dinner and a movie. On the third date, SrA MI spent the night in the appellant's dorm room. After kissing and expressly telling the appellant she was not going to have sexual intercourse with him, she fell asleep fully clothed. Twice during the night, she awoke to the appellant, who had unbuttoned her clothing, placing his fingers inside or near her vagina. Both times she told him she did not approve, and he offered excuses. Two nights later, SrA MI decided to engage in sexual activity with the appellant. They agreed on a safety word to indicate a stop to the sexual activity. SrA MI and the appellant engaged in a variety of consensual sexual activities. Then the appellant held her arms above her head, pinned her body to the bed with his body weight, and engaged in vaginal intercourse with her that she found to be painful. She told him the safety word, but he ignored it. He continued to engage in intercourse despite her struggling, saying the safety word, and telling him no. She fell asleep in the appellant's bed and awakened to him kissing her on the neck, after which he engaged in anal intercourse with her. She pushed him away and then fell back asleep. She later awakened to the appellant having anal intercourse with her, and again, she pushed him away. Two days later she ended their relationship by text message. After having a nightmare about the appellant raping her, she reported the earlier assaults.

SrA TP, a friend of SrA MI who was aware of appellant's conduct, became concerned that a young woman he had just met had also dated the appellant. SrA TP met Ms. CF through a web-based dating service, OK Cupid. During the course of their date, they discussed prior relationships. Ms. CF described an individual who sounded like the appellant, so SrA TP asked her if the appellant was the person she had dated. After

---

[1] The first, seventh, and eighth issues are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Ms. CF said he was the appellant, SrA TP provided her contact information to the Air Force Office of Special Investigations (AFOSI) and later escorted her to their office to be interviewed. At the time she made her statement, Ms. CF did not know SrA MI or the details of the investigation. However, she assumed the appellant was being investigated for rape because of her prior experiences with him.

Twenty-year-old Ms. CF had met the appellant through OK Cupid. After texting and exchanging messages, Ms. CF and the appellant met in person, and he took her to his dorm room to watch a movie. They kissed, cuddled, and engaged in consensual intercourse, after which she fell asleep. She awakened to the appellant having sexual intercourse with her. After he ejaculated, he explained he was punishing her for snoring and waking him up. After this first date, they continued to have a relationship. On a night in October, Ms. CF was watching television with the appellant in his dorm room. After a repeated struggle while he tried to pull down her pants, the appellant held her hands over her head, pushed her legs apart, and had sexual intercourse with her while telling her to stop being so difficult. Ms. CF cried afterwards but did not report this incident. She continued to be involved with the appellant. In late October or early November, the appellant asked Ms. CF to visit him. She was helping a friend so she told him he needed to wait. About an hour later, Ms. CF arrived at the base. The appellant was angry and told her she needed to be punished. He proceeded to have sexual intercourse with her while telling her if she made too much noise, was difficult, or resisted, he would have anal intercourse with her whether she wanted to or not. Ms. CF was scared by the appellant's threats, his demeanor, and his actions. Again she cried afterwards but did not report the incident because she was embarrassed. Ms. CF later ended their relationship.

Ms. GG was 20 years old when she met the appellant through OK Cupid. They exchanged text messages and went on a few dates. They also engaged in consensual sexual activity. In October 2011, Ms. GG was visiting the appellant in his dorm room. He asked her to perform oral sex on him, and she refused. The appellant then pushed her down, grabbed her head and, despite her resistance, forced his penis into her mouth. Later that night, they engaged in consensual vaginal intercourse. Again in November 2011, the appellant grabbed Ms. GG's head and forced her to perform oral sex on him after she had declined. They stopped dating, but Ms. GG decided to visit him again. While in his dorm room, the appellant tried to kiss her and to unbutton her pants, and Ms. GG told him to stop each time, which he did. Despite her earlier protestations, the appellant forced his hand inside her pants and touched her vagina. At this point, Ms. GG emphatically told him she would not engage in sexual activity with him and left. Ms. GG knew neither SrA MI nor Ms. CF.

*Challenge for Cause*

The appellant argues the military judge erroneously denied a challenge for cause against Lieutenant Colonel (Lt Col) JB for both actual and implied bias because her sister was a victim of a sexual assault while she was a cadet at the Air Force Academy. Lt Col JB explained that in 1996 a football player on the Air Force Academy's team entered her sister's dorm room and fondled her while she was asleep. Her sister reported the incident, and the perpetrator was administratively disciplined and removed from the football team. Her sister graduated in 1998, and they have not talked about the incident since then. Lt Col JB explained her sister was satisfied with how it was handled and had moved on from the assault.

The appellant also argues the military judge erred when he denied a challenge for cause for implied bias against Staff Sergeant (SSgt) EV. SSgt EV volunteered with the on-base victims' advocate group in 2007. She received three days of training and then served with the group for at most a year. During that time, she was on-call for one week but never was assigned to a victim. She explained she volunteered because she liked to help people and it would be a good enlisted performance report input.

Rule for Courts-Martial 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears that the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." "This rule encompasses challenges based upon both actual and implied bias." *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008) (citing *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)).

"The test for actual bias is whether any bias is such that it will not yield to the evidence presented and the judge's instructions." *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007) (quoting *United States v. Napoleon*, 46 M.J. 279, 283 (C.A.A.F. 1997)) (internal quotation marks omitted). Because the existence of actual bias is a question of fact, "we provide the military judge with significant latitude in determining whether it is present in a prospective member." *Id.* (citing *United States v. Warden*, 51 M.J. 78, 81 (C.A.A.F. 1999)). Actual bias is reviewed "subjectively, through the eyes of the military judge or the court members." *Warden*, 51 M.J. at 81 (quoting *Napoleon*, 46 M.J. at 283) (internal quotation marks omitted). "[A] challenge based on actual bias is essentially one of credibility, and because the military judge has an opportunity to observe the demeanor of court members and assess their credibility on voir dire, a military judge's ruling on actual bias is afforded deference." *United States v. Briggs*, 64 M.J. 285, 286 (C.A.A.F. 2007) (quoting *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996)) (internal quotation marks omitted).

The test for assessing an R.C.M. 912(f)(1)(N) challenge for implied bias is "objective, viewed through the eyes of the public, focusing on the appearance of

fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *Clay*, 64 M.J. at 276) (internal quotation marks omitted). "The hypothetical 'public' is assumed to be familiar with the military justice system." *Id.* (citing *United States v. Downing*, 56 M.J. 419, 423 (C.A.A.F. 2002)). We review issues of implied bias "under a standard less deferential than abuse of discretion but more deferential than de novo." *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004) (quoting *United States v. Miles*, 58 M.J. 192, 195 (C.A.A.F. 2003)) (internal quotation marks omitted). "[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate." *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993). "The liberal grant mandate recognizes the unique nature of military courts-martial panels, particularly that those bodies are detailed by convening authorities and that the accused has only one peremptory challenge." *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006) (citing *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005)).

The military judge did not abuse his discretion in denying the challenge for cause against Lt Col JB. Lt Col JB described that her sister was the victim of an assault that occurred 17 years ago, and they had not discussed the incident for about 15 years. "[T]he fact that a member was close to someone who had been a victim of a similar crime is not grounds for per se disqualification." *United States v. Terry*, 64 M.J. 295, 303 (C.A.A.F. 2007). The military judge found there was little overlap between the facts of Lt Col JB's sister's assault and the evidence in this case. The military judge observed Lt Col JB's demeanor when answering the individual questions and when she agreed she could be fair and impartial. The military judge found Lt Col JB clearly stated she did not feel any pressure to arrive at any preordained result in the case. The military judge considered both actual bias and implied bias with the liberal grant mandate. We find no error in the military judge's denial of the challenge for cause against Lt Col JB.

Likewise, we find no error in the military judge's denial of the challenge for cause of SSgt EV. SSgt EV volunteered with the on-base victim advocacy group about 5 years earlier. She was on-call for one week and was never assigned to a victim. Like the military judge, we have no doubts about the fairness and the appearance of fairness by having SSgt EV serve as a member of the court-martial panel for this appellant.

*Testimony by Expert Witness during Findings*

After the victims testified, the prosecution sought to call Dr. Elaine Bailey as an expert witness in forensic psychology. Trial defense counsel objected to the entirety of Dr. Bailey's testimony as improper bolstering of the victims and profiling of the appellant. The military judge overruled trial defense counsel's objection in part by allowing the expert witness to testify regarding the actions of the victims. The military judge sustained the objection, in part, by prohibiting the introduction of any evidence that

would profile the appellant. Dr. Bailey testified about why people stay in abusive relationships. During her testimony she explained coercive control and the effect it has on victims by eroding their sense of self-esteem. She also described motivators for people to stay in a relationship even during its beginning stage, which she referred to as the "honeymoon" or "tippy-toe" stage.

During cross-examination, trial defense counsel asked Dr. Bailey if she was choosing personality traits of victims based on the earlier testimony of the witnesses. Dr. Bailey testified she was focusing her testimony on what was relevant to the case but was only doing so generally as she had not diagnosed or treated any of the victims. Dr. Bailey also explained how issues with memory and perception influence a person's ability to recall events. This included issues such as suggestibility during interviews, memory decay, and dreams.

The appellant renews this objection on appeal by claiming Dr. Bailey improperly bolstered the victim's testimony and she improperly introduced evidence profiling the appellant as an abuser. We disagree.

A military judge's decision to admit expert witness testimony is reviewed for an abuse of discretion. *United States v. Huberty*, 53 M.J. 369, 372 (C.A.A.F. 2000). In sexual assault cases, expert testimony about what might be considered counterintuitive behavior of the victim is permitted because it assists the members in "disabusing themselves of widely held misconceptions." *United States v. Flesher*, 73 M.J. 303, 313 (C.A.A.F. 2014) (quoting *United States v. Houser*, 36 M.J. 392, 398 (C.M.A. 1993)) (internal quotation marks omitted). We do not see any prohibition on an expert witness testifying as to the relevant factors in a particular court-martial. We find the military judge did not abuse his discretion in admitting this evidence.

An expert cannot testify about his or her belief that a witness is telling the truth and thereby "usurp the exclusive function of the jury to weigh the evidence and determine credibility." *United States v. Harrison*, 31 M.J. 330, 332 (C.M.A. 1990) (quoting *United States v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981)) (internal quotation marks omitted). However, that is not what occurred in this case. The learned expert testified about issues of memory and factors that influence memory. In response to a member's question, she specifically detailed how a traumatic event like rape may fragment or affect memory. She elaborated some individuals will be able to recall the events accurately and some will not. She testified memory is fallible. Her testimony did not usurp the role of the members in determining the credibility of the witnesses.

> Profile evidence is evidence that presents a characteristic profile or trait of an offender, and then places the accused's personal characteristic or trait within that profile as proof of guilt. *United States v. Rynning*,

47 M.J. 420, 422 (C.A.A.F. 1998). In *United States v. Banks*, [the United States Court of Appeals for the Armed Forces] held that "generally, use of any characteristic 'profile' as evidence of guilt or innocence in criminal trials is improper." 36 M.J. 150, 161 (C.M.A. 1992). Such evidence is improper because it treads too closely to character evidence offered to show that an accused acted in conformity with that character and committed the act in question, evidence prohibited under M.R.E. 404(b). *See Banks*, 36 M.J. at 161.

*United States v. Harrow*, 65 M.J. 190, 203 (C.A.A.F. 2007)

The appellant argues the expert's testimony on coercive control was impermissible profiling evidence. We disagree. The expert was explaining factors that influence why an individual stays in a relationship after an abusive incident. She defined coercive control as "a pattern of manipulative behavior designed to gain dominance or control on a relationship." She explained this effects the self-esteem of the victims so they are more likely to remain in the relationship. When asked by the members if there were certain demographics of people who were more likely to be controlling or controlled, she stated she was not aware of those factors (age, ethnicity, socio-economic background, level of education) being specifically delineated in the scientific literature. We conclude the expert did not introduce improper profiling evidence. In this area, she focused her testimony on why victims of abuse would remain in a relationship with an abuser. "Evidence is not profile evidence simply because it tends to incriminate an accused." *Id.* at 204. The military judge did not abuse his discretion in admitting this evidence.

*Excusal of Member during Deliberations and Motion for Mistrial*

On 22 August 2013, the members began deliberations on findings at 1508 hours and then recessed for the night at 1813 hours. They resumed deliberations the next day at 0806 hours. While they were in deliberations, the base newspaper printed an article authored by a member of the panel, Chief Master Sergeant (CMSgt) RJ. The article, entitled "Pull the trigger: Training applies in different scenarios," discussed recent training on sexual assault prevention. The article compared M-16 proficiency training with sexual assault prevention training. The article explained M-16 training was necessary because, "Our actions need to be automatic so that when we look down the barrel of that rifle and focus on our sights, we are focused and prepared to kill the enemy. Our training can and will amount to a matter of life or death if your actions are not precise and instant. . . . So, I ask you this: Why did the AF take a day to retrain us all on sexual assault? . . . The AF trained us in the hopes that if we ever saw one of our wingmen in harm's way, we would 'pull the trigger.'"

The military judge granted defense counsel's motion to excuse CMSgt RJ. This reduced the panel from seven members to six members. Trial counsel proposed any votes the members had already taken should be "frozen." After taking a recess to consult with their client, trial defense counsel also requested "a freeze on the votes." CMSgt RJ was excused at 1100 hours. The military judge instructed the remaining members, "If you have already voted on a particular finding that vote sticks. So there is no reason to reaccomplish that vote." The military judge also informed the members the two-thirds necessary to convict was now four of six votes. Trial defense counsel did not object to the instructions. The members returned to deliberations at 1103 and returned with their verdict at 1122. After the members found the appellant guilty of all charges and specifications, trial defense counsel made a motion for a mistrial. The military judge explained his concerns about CMSgt RJ pertained only to sentencing, and he did not have any doubts about CMSgt RJ's fairness during findings. The military judge explained from a mathematical standpoint the appellant was in a better position by potentially having seven members for findings and six for sentencing. The military judge denied the mistrial motion.

The appellant now alleges the military judge erred in his instructions on freezing earlier votes and by not granting the motion for a mistrial.[2] We disagree.

The Sixth Amendment[3] right to an impartial jury governs court-martial members during the selection of individual members and the members' conduct during the proceedings and deliberations. *United States v. Lambert,* 55 M.J. 293, 295 (C.A.A.F. 2001). Rule for Courts-Martial 923 only allows impeachment of facially-proper findings when the members have been exposed to extraneous prejudicial information, improper outside influence, or unlawful command influence. There is no evidence any of these three conditions existed in this case. CMSgt RJ was a properly detailed member of the court-martial panel who was subject to voir dire. CMSgt RJ was not an interloper. *See United States v. Adams*, 66 M.J. 255 (C.A.A.F. 2008) (concluding members who were properly detailed by the convening authority were not interlopers). Neither the prosecution, nor the defense, nor the military judge expressed any concerns about his responses or his demeanor prior to the publication of the article in the base newspaper. Defense counsel vociferously argued against further voir dire of CMSgt RJ after the article came to light. Over trial counsel's objection, the military judge granted the defense motion to excuse CMSgt RJ without voir dire. We find no basis to impeach the verdict.

The appellant for the first time on appeal objects to the instructions provided by the military judge after he excused CMSgt RJ. At trial, after consulting with the appellant, trial defense counsel requested "a freeze on the votes" along with the excusal

---

[2] The appellant raises these as two separate assignments of error. We choose to address them together as they are inextricably intertwined.

[3] U.S. CONST. amend VI.

of CMSgt RJ without voir dire. The military judge clarified with defense counsel that they were requesting a freeze on all votes. The military judge explained he would instruct the members any prior votes were "frozen" and that for any additional voting four votes of guilty were required for a conviction because the panel was reduced to six members. Defense counsel did not object to the proposed instructions and after the members were so instructed, again did not object. The failure to object to the omission of an instruction before members deliberate constitutes forfeiture[4] of the objection in the absence of plain error. R.C.M. 920(f); *United States v. Simpson*, 58 M.J. 368, 378 (C.A.A.F. 2003) (citing *United States v. Glover*, 50 M.J. 476, 478 (C.A.A.F. 1999)). "To prevail under a plain error analysis, [the appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

We acknowledge the instruction to "freeze" the voting conflicts with the military judge's earlier instructions on reconsideration. In his instructions prior to deliberation on findings, the military judge provided the panel with the standard instruction that they "may reconsider any finding prior to it being announced in open court." The panel could reasonably have interpreted his subsequent instruction that the votes were frozen to suggest that reconsideration was no longer an option. This ambiguity between the instructions to "freeze" the vote without a clarification on the process of reconsideration was error. However, none of the members asked about reconsideration. Therefore, we are not convinced this error was plain or obvious. Furthermore, the appellant sought and obtained an instruction he thought would best benefit him; the fact his requested instruction did not result in relief does not automatically mean it was prejudicial.

After the members returned with their findings of guilty, defense counsel asked for a mistrial. Defense counsel argued the short time which elapsed between the excusal of CMSgt RJ and the members' return with findings indicated all the votes were "frozen" and CMSgt RJ had an impermissible taint on the proceedings. Defense counsel moved for a mistrial, and the military judge denied the motion. The appellant now renews his argument for a mistrial as the only appropriate remedy. A mistrial is an unusual and disfavored remedy which is a last resort only granted if other remedial action is insufficient to prevent a miscarriage of justice. *United States v. McFadden*, 74 M.J. 87, 89 (C.A.A.F. 2015). A military judge's decision on a motion for a mistrial will be reversed only if there is clear evidence of an abuse of discretion. *Id.* at 90. We conclude the military judge did not abuse his discretion. The military judge granted the defense-requested remedy to excuse CMSgt RJ without voir dire, to tell the remaining members not to speculate why he was excused, to order the members not to read the base newspaper or any other news sources, and to provide instructions freezing the result of

---

[4] We recognize that Rule for Courts-Martial 920(f) states that the failure to object constitutes waiver. However, as subsequent decisions have clarified, this is actually forfeiture. *See United States v. Sousa*, 72 M.J. 643, 651–52 (A.F. Ct. Crim. App. 2013).

previously conducted votes and updating procedural requirements for any as-yet unconducted votes. The appellant now argues we should adopt Federal Rule of Criminal Procedure 24(c)(3) and its requirement to instruct the members to begin their deliberations anew when an alternate jury member takes the place of an excused member after deliberations have begun. This ignores the fact there were no new members introduced into the deliberations in this court-martial. We find Federal Rule of Criminal Procedure 23(b)(3) which allows for 11-person panels to determine a verdict if one juror must be excused after deliberations to be more applicable. *See United States v. Sabir*, 628 F. Supp. 2d 414 (S.D.N.Y. 2007) (holding dismissal after deliberations began of jury member for good cause resulting in 11-person panel did not require a new trial). The military judge did not abuse his discretion by granting the defense-requested remedial actions and denying the motion for a mistrial.

*Cross-Examination of Defense Expert Witness*

During sentencing, defense counsel called Dr. John Fabian as an expert witness in clinical psychology, forensic psychiatry, and neuro-psychology. Dr. Fabian explained he was retained for the case about a month prior to his testimony and had met the appellant a few days prior to the court-martial. By the time of his testimony, Dr. Fabian had met with the appellant for about 11 hours, spent 13 hours with the appellant's mother, interviewed the appellant's step-father, and additionally had conducted both psychological and neuro-psychological testing.

On cross-examination, trial counsel confronted Dr. Fabian with statements the appellant made during his interview with law enforcement. Dr. Fabian acknowledged he was aware of some of the statements. Regarding other statements, trial counsel confronted the witness and asked if those statements by the appellant changed his opinion and diagnosis. Dr. Fabian steadfastly explained why the statements did not change his opinion.

After a series of questions about the statements, trial defense counsel objected because trial counsel had not introduced the video of the appellant's statements. Trial counsel responded he was asking the questions as cross-examination on the basis of the expert's opinion. The military judge overruled the objection. The appellant now argues trial counsel was improperly allowed to testify during the cross-examination and the military judge erred by not providing a limiting instruction.

"A party-opponent may test the basis of an expert's opinion by inquiring into the facts and data underlying that opinion." *United States v. Rodriquez*, 56 M.J. 336, 343 (C.A.A.F. 2002) (citing Mil. R. Evid. 703 and 705). This may include statements previously made by the appellant. *Id.* Trial counsel was entitled to cross-examine Dr. Fabian using statements previously made by the appellant. Trial counsel never admitted a copy of the interview into evidence. Some of those statements were admitted

into evidence when Dr. Fabian agreed the appellant made the remarks. Others were not admitted into evidence when the witness did not confirm the appellant made the statements. The military judge provided a limiting instruction that unless the members determined the truth of the asserted facts underlying any hypothetical question to the expert, they could not consider the answer of the expert witness to such hypothetical question. The military judge did not err by allowing the cross-examination in conjunction with this limiting instruction.

*Sentencing Argument of Trial Counsel*

During sentencing argument, trial counsel referenced statements made by the appellant in his law enforcement interview. The interview was never introduced into evidence. Trial defense counsel did not object.

Whether argument is improper is a question of law we review de novo. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citing *United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011)). If trial defense counsel failed to object to the argument at trial, we review for plain error. *Id.* To establish plain error, the appellant must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007) (internal quotation marks omitted). "'[T]rial counsel is at liberty to strike hard, but not foul, blows.'" *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Accordingly, trial counsel may not "unduly . . . inflame the passions or prejudices of the court members," *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983); or inject irrelevant matters, such as personal opinions or facts not in evidence, *United States v. Fletcher*, 62 M.J. 175, 180, 183 (C.A.A.F. 2005). Stated conversely, trial counsel is limited to arguing the evidence in the record and the inferences fairly derived from that evidence. *See United States v. Paxton*, 64 M.J. 484, 488 (C.A.A.F. 2007); *United States v. White*, 36 M.J. 306, 308 (C.M.A. 1993).

We find error in trial counsel's references to the appellant's statements to law enforcement because those facts were not admitted into evidence. However, we do not find the error to be plain or obvious. Trial counsel's use of the appellant's statements was limited in length and detail. They also were interspersed with criticism of Dr. Fabian's diagnosis. As discussed above, the appellant's prior statements were a proper basis for cross-examination, even if they were not admitted into evidence.

Even if the error was plain or obvious, we conclude it did not materially prejudice a substantial right of the appellant. In determining if there was prejudice we balance three factors: (1) the severity of the misconduct, (2) the curative measures at trial, and (3) the weight of the evidence. *Fletcher*, 62 M.J. at 184. Trial defense counsel did not object, and the military judge did not sua sponte issue any curative instructions, so there

were no curative measures at trial. The severity of the misconduct was minimal. The statements were neither pervasive nor severe. Some of the references were proper in that they were linked to the cross-examination of Dr. Fabian. However, a few of the statements were not even included in questions from cross-examination nor were they linked to their admissible purpose. The erroneous portions of the argument were only a small part of trial counsel's extensive argument. We also consider the weight of the properly admitted evidence. The appellant was convicted of multiple offenses against three individuals. The evidence from these witnesses established the appellant had a common plan and course of action. The three victims all testified during sentencing as to the impact of these offenses. We also consider that trial counsel argued for 15 years' confinement, and the members returned with a sentence including 10 years' confinement. Upon considering all the factors, we determine the error did not materially prejudice a substantial right of the appellant.

*Ineffective Assistance of Counsel*

The appellant alleges his trial defense counsel were ineffective by (1) failing to challenge the results of the Rule for Courts-Martial (R.C.M.) 706 inquiry, and (2) not properly preparing their expert witness, Dr. Fabian. We ordered the submission of affidavits from both trial defense counsel. Having reviewed the appellant's and both counsel's affidavits, we conclude we need not order additional fact-finding to resolve the assigned error. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

We review claims of ineffective assistance of counsel de novo. *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). To establish ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The deficiency prong requires an appellant to show the performance of counsel fell below an objective standard of reasonableness, according to the prevailing standards of the profession. *Strickland*, 466 U.S. at 688. The prejudice prong requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

On 3 June 2013, trial defense counsel filed a motion for an R.C.M. 706 inquiry. At that time, trial defense counsel had been appointed an expert consultant, Dr. KG. The military judge granted the motion that same day. During Article 39(a) sessions on 5 June 2013, trial defense counsel expressed concern about the scope of the inquiry and about certain diagnostic testing. The military judge reminded trial defense counsel the R.C.M. 706 inquiry was limited to mental responsibility for the offenses and mental capacity to stand trial. The defense also expressed concern the board members were not going to meet with the appellant. The "short report" required by R.C.M. 706(c)(3) was produced on 5 June 2013. The inquiry was conducted by a licensed clinical psychologist

and a board-certified psychiatrist. The board received the military judge's order, the report of investigation including the video recording of the appellant's interviews, his outpatient mental health records, and his electronic medical record which covered all the medical care the appellant received since entering the Air Force in 2009. A member of the board also interviewed the appellant and his mother, along with receiving additional information from the civilian trial defense counsel and the appointed expert consultant in psychology. The court-martial was subsequently continued to 20 August 2013. By the time the court-martial reconvened, the defense had been provided their requested expert consultant/witness Dr. Jonathan Fabian. Trial defense counsel did not raise any additional concerns about the R.C.M. 706 inquiry and its results.

We find no deficiency in trial defense counsel's actions regarding the R.C.M. 706 inquiry. They made the motion for the inquiry, and it was granted. Trial defense counsel expressed concern about the board not meeting with their client. Afterwards, a board member interviewed both the appellant and his mother. We have reviewed the report, and it addresses his mental capacity and mental responsibility. We find defense counsel's performance was not deficient, as we do not see any basis for challenging the report.

Additionally, we do not find trial defense counsel's preparation with the expert witness to be deficient. The appellant argues his trial defense counsel were deficient for not providing Dr. Fabian with all the information available. On cross-examination, Dr. Fabian explained that although he had reviewed the report of investigation, he had only watched about 25 minutes of the appellant's hours-long interview with investigators. Dr. Fabian also revealed that he had not been provided the appellant's mental health records. As detailed above, Dr. Fabian was a qualified expert witness who had interviewed the appellant, his mother, and his step-father. Dr. Fabian had conducted psychological and neuro-psychological testing. Dr. Fabian was present at trial for almost all of the testimony of the witnesses. He testified to mitigating circumstances about the appellant. Trial defense counsel had sound tactical reasons to present this mitigating evidence about the appellant's autism spectrum disorder, depression, post-traumatic stress disorder and the physical, sexual, and emotional abuse he suffered as a child.

The appellant alleges his trial defense counsel were ineffective for not preparing Dr. Fabian for his testimony. Dr. Fabian's testimony is described at length above. Dr. Fabian admitted he had not reviewed the results of the R.C.M. 706 inquiry, nor the entire videotaped statement the appellant made to law enforcement. Because he did not review the entire interview, trial counsel was unable to have all the portions he wanted admitted into evidence through cross-examination. Civilian trial defense counsel explained he believed, as a tactical matter, it was preferable to have Dr. Fabian conduct his own independent testing to support his findings and conclusions.

We conclude trial defense counsel had sound tactical reasons for each of the decisions appellant challenges. This assignment of error is therefore without merit. *See United*

*States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001) (observing that the court "will not second-guess the strategic or tactical decisions made at trial by defense counsel").

## *Cumulative Error*

Finally, the appellant contends even if none of his multiple assignments of error entitle him to relief, he is nevertheless entitled to relief under the cumulative error doctrine. We review such claims de novo. *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011). Under the cumulative error doctrine, "a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate the disapproval of a finding." *Id.* (quoting *United States v. Banks*, 36 M.J. 150, 170–71 (C.M.A. 1992)) (internal quotation marks omitted). "Assertions of error without merit are not sufficient to invoke this doctrine." *United States v. Gray*, 51 M.J. 1, 61 (C.A.A.F. 1999)). We will reverse the proceedings only if we determine the cumulative errors denied the appellant a fair trial. *See Pope*, 328 M.J. at 335. There was overwhelming evidence of the appellant's guilt, and any errors that occurred did not deprive the appellant of a fair trial, either in findings or in sentencing. We do not grant the appellant any relief under this theory.

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[5] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and the sentence are

**AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court

---

[5] The Court-Martial Order (CMO) does not list the pleas or findings for Specification 4 of Charge I. A court-martial order should list all charges and specifications on which the accused was arraigned. We order promulgation of a corrected CMO. *See* Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 10.8.2.2 (6 June 2013).