UNITED STATES, Appellee,

v.

Todd A. NAPOLITANO, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 99–0365.
Crim.App. No. 97–0675.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 11, 2000.

Decided July 5, 2000.

SULLIVAN, J., delivered the opinion of
the Court, in which CRAWFORD, C.J.,
GIERKE and EFFRON, JJ., and COX, S.J.,
joined.

For Appellant: *Major Dale E. Anderson,*
USMC (argued); *Major S.D. Chace,* USMC.

For Appellee: *Captain Edward C. Durant*, USMC (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Commander Eugene E. Irvin*, USN (on brief); *Major Troy D. Taylor*, USMC.

Judge SULLIVAN delivered the opinion of the Court.

Appellant was tried by a general court-martial composed of officer members on May 20–23, 1996, at Camp Lejeune, North Carolina. After entering mixed pleas, appellant was found guilty of conspiracy to commit larceny (2 specifications), unauthorized absence, missing movement, larceny (4 specifications), wrongful appropriation, and housebreaking (2 specifications), in violation of Articles 81, 86, 87, 121, and 130, Uniform Code of Military Justice, 10 USC §§ 881, 886, 887, 921, and 930, respectively. He was sentenced to a bad-conduct discharge, confinement for 4 years, total forfeitures, and reduction to the rank of E–1. On February 26, 1997, the convening authority approved the sentence as adjudged and, except for the punitive discharge, ordered the sentence executed. On November 24, 1998, in an unpublished decision, the Court of Criminal Appeals affirmed the findings and sentence. *United States v. Napolitano*, No. 97–0675 (N.M.Ct.Crim.App.).

On August 16, 1999, we granted review of the following issue:

> WHETHER THE LOWER COURT ERRED WHEN IT UPHELD THE MILITARY JUDGE'S DENIAL OF THE CHALLENGE FOR CAUSE FOR CAPTAIN MALANOWSKI WHERE CAPTAIN MALANOWSKI DISPLAYED A BIAS AGAINST CIVILIAN DEFENSE COUNSEL.

We hold that the military judge did not abuse his discretion when he denied appellant's request to excuse Captain Malanowski for cause. *See United States v. Schlamer*, 52 MJ 80 (1999); *United States v. Warden*, 51 MJ 78 (1999).

Appellant claims that a member of his court-martial, Captain Malanowski, was both actually and impliedly biased against him because he chose to be represented by civilian counsel. The relevant portion of the trial record, during *voir dire*, upon which these claims are based, is as follows:

MJ [the trial judge]: Thank you. Also on your questionnaire, you mentioned that you had sat on two recent cases. I believe it was Roderiquez and the Fog case, and you mentioned in there on your questionnaire that you felt an injustice occurred in those two trials. Can you explain that?

MEM [Capt Malanowski]: I don't believe I said that, sir. Maybe my writing is poor.

MJ: The question was: "Do you feel that an injustice occurred in any of these trials," and you checked "yes."

MEM: I must have misread that, sir.

MJ: There's something after the writing. "On the amount of" something and I cannot read your handwriting.

CC: Accused?

MJ: "On account of the accused" or "amount of the accused."

Bailiff, I would ask you to hand to the member this questionnaire. It's right up at the top, Captain Malanowski. Maybe you could read that.

(The bailiff did as directed.)

MEM: "On the part of the accused," yes, sir.

MJ: Did—other than committing the offenses, did the accused do something in the trial that you believe was an injustice?

MEM: No, sir, not at the trial.

MJ: Do you think the two trials themselves were conducted fairly?

MEM: Yes, sir.

MJ: So, you were simply referring to the accused's commission of these crimes?

MEM: Yes, sir. At one point I was surprised that the defense was able to—these were fairly open and shut cases as seen by the preponderance of the evidence that was made at the trial, and I was surprised that the defense could do such a good job on both cases.

MJ: I don't know whether the evidence will appear so open and shut in this case. Maybe it will; maybe it won't, but will you consider that in any way in Lance Corporal Napolitano's case.

MEM: No, sir.

MJ: Can you keep a fair and open mind in this case, even though you sat on those other two cases?

MEM: Yes, sir.

MJ: *I think you also put on your questionnaire that you thought—your general impression of your lawyers was that they are freelance guns for hire, like Johnny Cochran. I'm not sure what that means. Is that a derogatory-type belief, or what do you mean by that?*

MEM: *At the time it can be derogatory, sir; but I was not making a universal statement. Just that they'll be paid—the defendants will pay him regardless of whether he's guilty or innocent, just like a part of the defense counsel.*

MJ: Well, I'm sure that the attorneys would hope to be paid regardless of how it comes out. Even a guilty person rates a defense counsel. Do you agree with that?

MEM: Yes, sir.

MJ: *And would you hold that against— Mr. McNeil is the only civilian in here. Would you hold that against Mr. McNeil and Lance Corporal Napolitano because he's a civilian attorney?*

MEM: *No, sir. I'm keeping an open mind that basically he is innocent right now.*

MJ: So, you presume him to be innocent until the government has proved his guilt by legal and competent evidence beyond a reasonable doubt.

MEM: Yes, sir.

MJ: *So, the fact that Mr. McNeil has obviously been hired by Lance Corporal Napolitano or his family will you hold that in any way against the accused in this case?*

MEM: *No, sir.*

MJ: Captain Burridge, do you have questions of Captain Malanowski?

TC: I do not, sir.

MJ: Mr. McNeil?

CC: Yes, sir. Good morning. Would you tell us, Captain, what you—you said briefly that you thought that the defense did a good job on a couple of cases. What did you mean by that?

MEM: One case was the Fog case where there were numerous witnesses and it involved underage children and dealing drugs. Major Meeks was the defense counsel and I thought he put on an excellent defense considering the evidence that was portrayed on the part of the prosecution. He really probably defended the best I could imagine. I think that a lot of the military lawyers would be willing to do that for the Fog case, and that was one of them and perhaps the main one I had in mind.

CC: On the Roderiquez case was it also a not guilty plea?

MEM: Yes.

CC: And did the defense counsel in that do a good job?

MEM: Did a good job as best as possible. There were numerous witnesses saying that the person had committed a felony assault or a maiming. There were numerous witnesses that saw him do it and so on and so forth, and I think it would be very difficult to do a defense case on that. They managed to pull that off.

CC: You indicated that you had some friends who were lawyers in Maimi [sic] after college?

MEM: Yes.

CC: Are they still practicing law?

MEM: Yes.

CC: What kind of law do they practice?

MEM: I think it is criminal law.

CC: Have you had much contact with your friends that are practicing law?

MEM: I haven't talked to them in the last couple of years, but—

CC: Can you again expound on your thoughts about civilian attorneys?

MEM: *Basically, they are for hire and it doesn't matter whether they know that a person is guilty or innocent and they always do, you know, whatever they can in that regard. Obviously, the Johnny Cochran case didn't have my full respect—what he did, but if you look at it in an altruistic point of view that he thinks his client's innocent and he's hired there to do that, he's going to, I guess, do a good job.*

CC: What do you see the difference between me being a civilian attorney and Captain Richardson being a military attorney in terms of representing my client, besides that I get paid?

MEM: I guess that—I would assume that the defendant helped pay for you and that's about the standard of difference, I guess.

CC: I didn't understand what you meant by the difference in terms of having a civilian attorney in the issue of guilt or innocence. What did you mean by that?

MEM: *Well, it's my impression that a number wouldn't care whether the person was guilty or innocent when they are defending. In other words, they may push aside some of their own moral beliefs. For instance, let's say—not in this case, but let's say that he was a child molester; and in reviewing for the trial, his defense counsel knew that in his mind that he probably did it. He would still, let's say, defend to the best of his ability. You know, that kind of creates problems with me because obviously you wouldn't—if you're morally—if it's morally reprehensiveable [sic], an action that you're defending, then he wouldn't somehow subconsciously may or may not want to try as hard to work for him to get him acquitted of that crime. So, you know, it creates some problems there.*

MJ: Well, let me interrupt just a minute. *Actually, you may not be aware of it, but the ethical rules are that a defense attorney represents his client to the fullest of his ability regardless of his belief in guilt or innocence.* If that attorney because of the crime or the heinous nature of it cannot represent that defense counsel [sic], then he is in violation of the ethical code and can be disciplined for that. *It's just the opposite of what you may think.*

The defense counsel has obligation to the client within the bounds of the law; that is, he must obey the law. He cannot present perjure[d] testimony and that sort of thing or false facts. He must represent his client regardless of his own personal beliefs.

*Do you have a problem with that at all?*

MEM: *A slight bit, sir, but I mean I can live with that, sir. I was not aware of how far that went as you just described.*

MJ: Well, if a friend of yours were accused of a crime regardless of whether he did it or not, he would be entitled to representation; and if he hired a defense attorney, he would want an attorney who is going to represent him. He's not going to represent the people or the government, but he's going to represent that individual; and that is what the ethics rules are. The defense attorney represents that accused and not the government and not the people and not morals in general.

Do you understand that? Do you have any problems with it?

MEM: *I guess that's the only way that it could really work.*

MJ: *Would you have any difficulty with that at all?*

MEM: *No, sir.*

MJ: Okay. Mr. McNeil, further questions?

CC: Yes, sir. Captain, I realize that you've been assigned these duties, but in March and April I guess you've been pretty busy with court-martials [sic]. You've done, what, two of them?

MEM: I believe so.

CC: In all candor, would it be difficult for you to continue to do another one in such a short period of time?

MEM: I don't believe so, sir.

CC: Now, in the Fog case, Captain Richardson was the prosecutor in that particular case; is that correct?

MEM: I just remember basically Major Meeks and I think he was—not as active role in the presentation of the case.

CC: But you do remember that he was the prosecutor?

MEM: I remember him being there.

CC: Does it bother you at all in terms of how you perceive lawyers and everything, the fact that today he is a defense attorney?

MEM: No, sir.

CC: No further questions, sir.

MJ: Questions in light of those, Captain Burridge?

TC: *Yes, sir. Captain, I believe a possible bias against the civilian defense counsel— would you agree that there is a certain bias there?*

MEM: *Not on my part.*

TC: *Not on your part. So, regardless of what you may think about the role of a defense attorney, you would in no way hold that against the accused in this case, would you?*

MEM: *I wouldn't.*

TC: You would be able to listen to all the evidence and make your determination of guilt or innocence based upon the evidence and not based upon the performance of a particular lawyer?

MEM: Based on the evidence.

TC: Thank you. Nothing further, sir.

(R. at 74–80)(emphasis added).

The defense then challenged Captain Malanowski for cause, which the military judge denied, as follows:

MJ: And the members are absent. Very well. Trial counsel, do you have a challenge for cause?

TC: The government does not, sir.

MJ: Mr. McNeil, do you have a challenge for cause?

CC: Yes, sir. We would challenge for cause Captain Malanowski, sir.

MJ: And on what grounds?

CC: *Sir, under the liberal grant mandate we believe that his questions regarding his thoughts about counsel and everything were of the notion that it would be hard for him to be a fair and impartial juror despite his stating that he would. Even after the judge tried to explain some of the ethical rules, he said that he still understood them but still had a slight problem. So, we believe that he should be challenged for cause.*

MJ: I am going to deny that challenge for cause. Do you have any further challenges for cause?

CC: No, sir.

(R. at 87)(emphasis added).

The defense subsequently peremptorily challenged Captain Malanowski, and he was removed from appellant's court-martial. (R. at 88).

— — —

Appellant argues that Captain Malanowski displayed both actual and implied bias against civilian defense attorneys, which extended to his civilian defense counsel. Final Brief at 6. Based on these biases and the military justice system's liberal grant policy for challenges for cause (*see United States v. Smart,* 21 MJ 15, 18–19 n. 1 (CMA 1985)), he argues that the military judge should have granted his challenge for cause against Captain Malanowski. *See* Article 41(a)(1), UCMJ, 10 USC § 841(a)(1); RCM 912(f)(1)(N), Manual for Courts–Martial, United States (1995 ed.); *see generally United States v. Schlamer,* 52 MJ at 92. We disagree.

This Court will not overturn a military judge's denial of a challenge for cause unless there is a clear abuse of discretion by the judge in applying the liberal-grant policy. *See United States v. White,* 36 MJ 284, 287 (1993). More particularly, the military judge is given great deference when deciding whether actual bias exists because it is a question of fact, and the judge has observed the demeanor of the challenged member. *See United States v. Warden,* 51 MJ at 81. Less deference is given to the military judge's determination when this Court is reviewing a finding on implied bias because it is objectively "viewed through the eyes of the public." *Id.*

Turning first to the question of actual bias, we note that appellant's challenge rested largely on Captain Malanowski's "Johnny Cochran" comment contained in his pretrial answer to a court member questionnaire. This questionnaire asked: "What is your general impression or opinion of lawyers?" The member answered: "Freelance guns for hire (aka Johnies [sic] Cochran)".

Although this comment expressed a negative perception of attorneys, Captain Malanowski's later response made it clear that he did not have an actual bias against appellant's civilian defense counsel. *See* RCM 912(f)(1)(N), Discussion. The military judge subsequently asked him several questions as a result of this comment and explained to him the various legal aspects of a defense attorney's role. The ensuing dialogue between the military judge and Captain Malanowski reflects an evolution of Captain Malanowski's thinking on this question. Finally, trial counsel directly asked Captain Malanowski questions about possible bias toward civilian defense counsel, to which Captain Malanowski responded that he held no such bias. (R. at 80). Accordingly, based on the entire record before us, we find that the military judge did not abuse his discretion in finding Captain Malanowski was not actually biased against appellant or his civilian defense counsel. *See United States v. Warden,* 51 MJ at 82 (entire dialogue with military judge must be considered); *United States v. Velez,* 48 MJ 220, 225 (1998) (record provided basis for military judge's acceptance of member's disclaimer of bias).

■ We now turn to the question of implied bias. This Court has generally noted that "when there is no actual bias, 'implied bias should be invoked rarely.'" *United States v. Warden,* 51 MJ at 81–82. Implied bias exists when, regardless of an individual member's disclaimer of bias, "most people in

the same position would be prejudiced [*i.e.* biased]." * *United States v. Schlamer, supra* at 93; *United States v. Smart, supra* at 20, citing *Taylor v. United States,* 386 F.Supp. 132, 139–40 (E.D.Pa.1974). The general focus is "on the perception or appearance of fairness of the military justice system." *United States v. Schlamer,* 52 MJ at 93.

■ This is not a case where implied bias exists. *Cf. United States v. Ai,* 49 MJ 1, 5 (1998). Captain Malanowski's initial written statements demonstrated his disapproval of one civilian defense attorney (not appellant's) from a layman's point of view. However, after proper instruction by the trial judge, this member essentially retracted this opinion during *voir dire.* In fact, he ultimately stated that he held no bias against civilian defense counsel in general or appellant as a result of his civilian counsel of choice. In our view, most people in Captain Malanowski's position would not consider themselves bound by their initial comments suggesting a bias. Accordingly, based on the entire record in this case, we hold that no reasonable perception of unfairness arose as a result of Captain Malanowski sitting as a member at appellant's court-martial. *United States v. Schlamer, supra* at 93–94 (all responses must be considered).

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

---

* We have previously noted the trend in federal circuit courts to distinguish "implied" bias situations from "inferred" bias situations. *See United* States *v. Velez,* 48 MJ 220, 225 (1998), citing *United States v. Torres,* 128 F.3d 38, 45–47 (2d Cir.1997).