*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

**UNITED STATES**
Appellee

**v.**

**Rodrigo L. URIETA, Specialist**
United States Army, Appellant

**No. 24-0172**
Crim. App. No. 20220432

Argued December 11, 2024—Decided March 24, 2025

Military Judge: Albert G. Courie III

For Appellant: *Captain Amir R. Hamdoun* (argued); *Colonel Philip M. Staten, Lieutenant Colonel Autumn R. Porter, Major Robert D. Luyties,* and *Captain Andrew W. Moore* (on brief); *Major Matthew S. Fields.*

For Appellee: *Major Joseph H. Lam* (argued); *Colonel Richard E. Gorini* and *Major Lisa Limb* (on brief); *Captain Joshua A. Hartsell.*

Chief Judge OHLSON delivered the opinion of the Court, in which Judge MAGGS, Judge HARDY, and Judge JOHNSON joined. Judge MAGGS filed a separate concurring opinion, and Judge SPARKS filed a separate concurring dubitante opinion.

———————————

Chief Judge OHLSON delivered the opinion of the Court.

Appellant was charged with multiple sexual assault offenses and retained civilian defense counsel. During voir dire at his court-martial, Appellant challenged the selection of Sergeant First Class (SFC) Bravo[1] as a panel member on actual and implied bias grounds. In support of his challenges, Appellant cited statements made by SFC Bravo regarding soldiers who retain civilian defense counsel. The military judge denied Appellant's challenges and Appellant now argues that the military judge erred. We hold that the military judge did not abuse his discretion in denying Appellant's challenge for actual bias. However, we conclude that SFC Bravo's responses during voir dire presented a close case of implied bias. And because the liberal grant mandate requires military judges to excuse potential panel members in close cases, we hold that the military judge erred by denying Appellant's implied bias challenge. Accordingly, we reverse the judgment of the United States Army Court of Criminal Appeals (CCA).

## I. Background

### A. Procedural History

The Government charged Appellant, a specialist (E-4) stationed at Fort Stewart, Georgia, with one specification of false official statement and three specifications of sexual assault in violation of Articles 107 and 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 920 (2018). During panel selection at a general court-martial, Appellant challenged SFC Bravo for actual and implied bias, but the military judge denied those challenges. The court-martial panel, which included SFC Bravo, subsequently convicted Appellant of the false official statement specification and two of the specifications for sexual assault. The military judge sentenced Appellant to a dishonorable discharge, eight months of confinement, and reduction to the

---

[1] To preserve the panel member's privacy, this opinion presents his name as a pseudonym.

grade of E-1. The convening authority took no action on the findings or sentence, and the military judge entered judgment. Before the CCA, Appellant argued that the military judge erred in denying Appellant's challenges against SFC Bravo. Brief for Appellant at 1, 10-13, *United States v. Urieta*, No. ARMY 20220432, 2024 CCA LEXIS 192 (A. Ct. Crim. App. Apr. 25, 2024). However, the CCA summarily affirmed the findings and sentence in this case. *United States v. Urieta*, No. ARMY 20220432, 2024 CCA LEXIS 192, at *1 (A. Ct. Crim. App. Apr. 25, 2024) (per curiam) (unpublished). Upon Appellant's petition to this Court, we granted review to determine whether the military judge erred in denying Appellant's actual and implied bias challenges to SFC Bravo. *United States v. Urieta*, 85 M.J. 119 (C.A.A.F. 2024) (order granting review).

## B. Appellant's Challenges For Cause

At trial, Appellant was represented by both military and civilian defense counsel. During group voir dire, Appellant's military defense counsel asked if "anyone here ever heard it said that if a Soldier hires civilian defense counsel, it must mean that Soldier is guilty." SFC Bravo answered in the affirmative. Appellant's military defense counsel then asked "[w]ould anyone here hold it against [Appellant] . . . for having hired a civilian defense counsel?" All potential members answered in the negative.

SFC Bravo was later recalled for individual voir dire and asked to further explain his views on soldiers who retain civilian defense counsel. SFC Bravo explained that "[t]o me, hiring an outside civilian lawyer means that you don't trust your defense much." He further stated:

> In my experience, I have only ever seen people hire civilian counsel after they have already been through the trial and their lawyers had let them down—I wouldn't say let them down. They didn't get the outcome they were looking for, so they went to retrial with a civilian lawyer, instead of a military [lawyer].

The military judge asked SFC Bravo if, when he said "[it] means that you don't trust your defense much," he

meant "your defense counsel as in the attorneys" or the "case you're going to present?" SFC Bravo responded that he was referring to "[a]ll of it." The military judge asked no additional questions.

Trial counsel then asked follow-up questions, leading to the following exchange:

> [Trial Counsel]: . . . [W]ith regard to the Civilian Defense Counsel, do you think it's more likely that [Appellant] is guilty solely because he has hired a Civilian Defense Counsel?
>
> [SFC Bravo]: I don't think it's an admission of guilt, or a thought of guilt, by hiring a civilian attorney. I just—it is unusual to me.
>
> [Trial Counsel]: When you said it has a perception, are you talking about at large or just in your—
>
> [SFC Bravo]: Just an outside perception of, yes, when you hire a civilian attorney, that basically, you don't trust the system from the military standpoint—that you have to go outside the military to bring somebody in.
>
> [Trial Counsel]: So, . . . if you're selected and you're weighing the facts, and weighing the evidence, considering everything, are you going to hold it against [Appellant] because he's hired a Civilian Defense Counsel?
>
> [SFC Bravo]: Not at all.
>
> [Trial Counsel]: Will you consider that at all in reaching a finding during your deliberations?
>
> [SFC Bravo]: Just the facts.

Appellant subsequently challenged SFC Bravo on actual and implied bias grounds, arguing SFC Bravo's responses demonstrated he would hold Appellant's decision to retain civilian defense counsel against him. The Government disagreed. Trial counsel asserted there was no risk of actual or implied bias because SFC Bravo had only expressed a general, rather than personal, belief about soldiers who retain civilian defense counsel. Trial counsel further noted that SFC Bravo stated he would follow the

military judge's instructions and independently weigh the facts in assessing Appellant's guilt or innocence.

The military judge denied Appellant's challenges in a ruling that did not distinguish between actual and implied bias. In finding no risk of bias, the military judge agreed with the Government that SFC Bravo had expressed "an outside perception" of soldiers who retain civilian defense counsel and not a personal belief. He further relied on SFC Bravo's assertions that he would not hold Appellant's decision to retain civilian defense counsel against him and would "just look at the facts of the case." After Appellant's counsel stated they had no further challenges for cause, the military judge stated that he had considered the liberal grant mandate for all challenges.

## II. Applicable Law

"As a matter of due process, an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel. Indeed, '[i]mpartial court-members are a *sine qua non* for a fair court-martial.'" *United States v. Wiesen*, 56 M.J. 172, 174 (C.A.A.F. 2001) (footnote omitted) (citations omitted). Rule for Courts-Martial (R.C.M.) 912(f)(1) (2019 ed.) provides specific grounds for excusing panel members for cause. As relevant here, R.C.M. 912(f)(1)(N) states that "[a] member shall be excused for cause whenever it appears that the member . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality."[2] "We have held that this language encompasses the two types of bias: actual and implied." *United States v. Keago*, 84 M.J. 367, 371 (C.A.A.F. 2024) (citing *United States v. Miles*, 58 M.J. 192, 194 (C.A.A.F. 2003)).

---

[2] "While this rule applies to both actual and implied bias, the thrust of this rule is implied bias." *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004) (citing *United States v. Minyard*, 46 M.J. 229, 231 (C.A.A.F. 1997)).

## A. Actual Bias

Actual bias is also known as "bias in fact." *United States v. Hennis*, 79 M.J. 370, 384 (C.A.A.F. 2020) (internal quotation marks omitted) (citation omitted). "It is 'the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.'" *Id.* (quoting *Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007)). The test for actual bias is whether a member's personal bias "will . . . yield to the military judge's instructions and the evidence presented at trial." *United States v. Nash*, 71 M.J. 83, 88 (C.A.A.F. 2012) (citing *United States v. Reynolds*, 23 M.J. 292, 294 (C.M.A. 1987)). An actual bias challenge is evaluated based on the totality of the circumstances. *United States v. Richardson*, 61 M.J. 113, 118 (C.A.A.F. 2005) (citing *Strand*, 59 M.J. at 459). "Because a challenge based on actual bias involves judgments regarding credibility, and because 'the military judge has an opportunity to observe the demeanor of court members and assess their credibility during voir dire,' a military judge's ruling on actual bias is afforded great deference." *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007) (quoting *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996)). Accordingly, we review a military judge's actual bias determinations for an abuse of discretion. *Hennis*, 79 M.J. at 384.

## B. Implied Bias

Implied bias is "'bias attributable in law to the prospective juror regardless of actual partiality.'" *Id.* at 385 (quoting *United States v. Wood*, 299 U.S. 123, 134 (1936)). The test for implied bias is "whether the risk that the public will perceive that the accused received something less than a court of fair, impartial members is too high." *United States v. Woods*, 74 M.J. 238, 243-44 (C.A.A.F. 2015) (internal quotation marks omitted) (citation omitted). In asking that question, courts consider "the totality of the circumstances[] and assume the public [is] familiar with the unique structure of the military justice system." *Id.* at 244 (citation omitted).

We review a military judge's implied bias analysis under a standard of review "that is less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Peters*, 74 M.J. 31, 33-34 (C.A.A.F. 2015) (internal quotation marks omitted) (citations omitted). In *Keago*, we explained this standard as follows:

> We interpret our case law as dictating a sliding standard of appellate review for implied bias challenges that falls somewhere on a spectrum between de novo and abuse of discretion based on the specific facts of the case. A military judge who cites the correct law and explains his implied bias reasoning on the record will receive greater deference (closer to the abuse of discretion standard), while a military judge who fails to do so will receive less deference (closer to the de novo standard). Accordingly, the more reasoning military judges provide, the more deference they will receive.

84 M.J. at 373 (citing *United* States *v. Rogers*, 75 M.J. 270, 273 (C.A.A.F. 2016)).

We have further noted that although "[w]e do not expect record dissertations" from military judges when they rule on implied bias challenges, *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002), "a mere '[i]ncantation of the legal test for [implied bias] without analysis is rarely sufficient in close cases." *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017) (alterations in original) (quoting *Peters*, 74 M.J. at 34).

### C. Liberal Grant Mandate

"Military judges must err on the side of granting defense challenges for cause." *Keago*, 84 M.J. at 372 (citing *Clay*, 64 M.J. at 277).

> This "liberal grant mandate" recognizes that "the interests of justice are best served by addressing potential member issues at the outset of judicial proceedings," and is intended to address "certain unique elements in the military justice system including limited peremptory rights and the manner of appointment of court-martial members that

presents perils that are not encountered else-where."

*Id.* (quoting *Peters*, 74 M.J. at 34). "This Court has held that, under the liberal grant mandate, if the military judge finds an implied bias challenge to be a close question, the challenge should be granted." *Id.* (citing *Peters*, 74 M.J. at 34).

### III. Discussion

Appellant argues that the military judge erred by deny-ing his actual and implied bias challenges against SFC Bravo. We address each argument in turn.

### A. Actual Bias

We hold that the military judge did not abuse his dis-cretion when he denied Appellant's challenge for actual bias. The "great deference" we afford military judges with respect to their actual bias determinations, *Clay*, 64 M.J. at 276, "reflects, among other things, the importance of de-meanor in evaluating the credibility of a member's answers during voir dire," *Woods*, 74 M.J. at 243. In the instant case, in light of SFC Bravo's statements that he could be fair and the military judge's observation of those state-ments, we do not "fault the military judge" for finding that SFC Bravo exhibited no actual bias. *United States v. Youngblood*, 47 M.J. 341, 342 (C.A.A.F. 1997).

In reaching this conclusion, we acknowledge that the military judge's ruling did not contain explicit findings as to SFC Bravo's demeanor and credibility. *See United States v. Terry*, 64 M.J. 295, 302-03 (C.A.A.F. 2007) (finding no abuse of discretion as to actual bias where the military judge *explicitly* noted the demeanor of members in their re-sponses, including that they appeared forthright, honest, and sincere). Nevertheless, we recognize that military judges are "in the best position to judge the sincerity and truthfulness of the challenged member's responses on voir dire." *Youngblood*, 47 M.J. at 342 (citing *Daulton*, 45 M.J. at 217). In the instant case, implicit in the military judge's finding of no actual bias is that he found SFC Bravo's state-ments of impartiality credible. Because there is nothing in

the record which outweighs or undermines this determination, there is an insufficient basis for this Court to conclude that the military judge abused his discretion.

### B. Implied Bias

Appellant also argues that the military judge erred in his implied bias determination. We agree. Specifically, we hold that the facts in this case presented a close case of implied bias, and therefore, the military judge was required to excuse SFC Bravo under the liberal grant mandate.

In deciding this issue, we preliminarily note two points about the military judge's ruling. First, the military judge failed to explain his implied bias reasoning. *Keago*, 84 M.J. at 373. And second, the military judge failed to distinguish between actual and implied bias, despite the fact that "the tests for actual and implied bias are not the same." *Id.* Indeed, these challenge-for-cause claims "require separate consideration under different principles of law." *United States v. Ai*, 49 M.J. 1, 4 (C.A.A.F. 1998) (citing *United States v. Velez*, 48 M.J. 220, 224-25 (C.A.A.F. 1998)).

In order to receive the amount of deference to which they would otherwise be entitled, military judges must provide a "clear signal" on the record that they "applied the right law." *Clay*, 64 M.J. at 277. Here, "[t]he military judge may well have intellectually applied the right [law]," but we do not know for certain because the military judge did not "place[] on the record his analysis and application of the law to the facts." *Downing*, 56 M.J. at 422. "Without the benefit of knowing 'how, and with what nuance, the military judge applied the principles embodied in the implied bias doctrine,' our standard of review moves significantly closer to de novo." *Keago*, 84 M.J. at 373-74 (quoting *Clay*, 64 M.J. at 278).[3]

---

[3] We also note that the military judge only invoked the liberal grant mandate in a perfunctory manner. We do not condone this approach. *See Peters*, 74 M.J. at 35 (disapproving of the military judge's cursory invocation of the liberal grant mandate because he otherwise failed to explain on the record "why, given the specific factors in [the] case, the balance tipped in favor of

Applying this less deferential standard of review, several factors lead us to conclude that the challenge to SFC Bravo presented a close case of implied bias.

First, the military judge's ruling was predicated on a mistaken view of the facts. Specifically, in his analysis the military judge relied on the assertion that SFC Bravo had merely noted a negative "*outside* perception" of soldiers who retain civilian defense counsel and had not stated that "he *personally* holds that perception." (Emphasis added.) However, at a number of points in the record, SFC Bravo actually stated that he was expressing a personal view. For example, SFC Bravo stated that "[t]o *me*, hiring an outside civilian lawyer means that you don't trust your defense very much." (Emphasis added.) He also disclosed that "*[i]n my experience, I* have only ever seen people hire civilian counsel after they have already been through the trial and their lawyers had let them down . . . . so they went to retrial with a civilian lawyer, instead of a military [lawyer]." (Emphasis added.)

Second, the military judge's factual analysis was lacking because he failed to consider the import of SFC Bravo's responses. Specifically, SFC Bravo had expressed the view that soldiers who retain civilian defense counsel "didn't get the outcome they were looking for [at their first trial], so they went to retrial with a civilian lawyer, instead of a military [lawyer]." Thus, SFC Bravo appeared to enter the court-martial with the belief that Appellant had previously been found guilty because he now had retained civilian defense counsel. And the military judge failed to consider this erroneous belief in the course of his implied bias analysis.

Third, and related to the previous points, the military judge failed to ask "critical questions that might [have] fill[ed] any implied bias gaps left by counsel." *Clay*, 64 M.J. at 277. Specifically, the military judge never asked SFC

denying the challenge"); *Clay*, 64 M.J. at 277 ("A military judge who addresses implied bias by applying the liberal grant mandate on the record will receive more deference on review than one that does not.").

Bravo to clarify what he meant by his observation that it was "unusual" for soldiers to retain civilian defense counsel. Similarly, the military judge never explored the question of whether SFC Bravo believed Appellant had previously been found guilty because Appellant had now retained civilian defense counsel. Left unclarified, these statements suggest that SFC Bravo may have had a critical misunderstanding about Appellant's constitutional right to counsel of choice and the role counsel plays in the court-martial process. *Rogers*, 75 M.J. at 271.

At one point, the military judge did ask SFC Bravo to clarify what he meant when he said, "To me, hiring an outside civilian lawyer means that you don't trust your defense much." The military judge questioned SFC Bravo whether by "defense" he meant the accused's "defense counsel, as in the attorneys" or "the case [the accused was] going to present?" SFC Bravo responded that he was referring to "[a]ll of it." However, the military judge ended his inquiry there. By not inquiring further into what SFC Bravo meant by "[a]ll of it," the military judge has left this Court to speculate as to the nature and contours of SFC Bravo's beliefs on this subject. And the argument by Appellant's counsel is well taken that SFC Bravo's answer, when viewed with his other responses, likely could have caused an objective observer to conclude that SFC Bravo believed Appellant's decision to retain civilian defense counsel meant Appellant realized that his defense to the pending charges was weak or nonexistent. *See Rogers*, 75 M.J. at 271.

Fourth, the military judge never provided instructional guidance to SFC Bravo to address his apparent incorrect belief about the circumstances under which a soldier may retain civilian defense counsel. Because the military judge failed to take this step, we agree with Appellant that this case is distinguishable from *United States v. Napolitano*, 53 M.J. 162 (C.A.A.F. 2000). As in this case, the appellant in *Napolitano* claimed that a member of his court-martial, Captain (Capt) Malanowski, was both actually and impliedly biased against him because he chose to be

represented by civilian counsel. *Id.* at 163. Specifically, Capt Malanowski expressed the view that civilian lawyers were *"freelance guns for hire, like Johnny Cochran,"* who would push aside their moral beliefs to represent someone they believed was guilty. *Id.* at 164. In response, the military judge gave a detailed instruction to Capt Malanowski on the duty of defense counsel to zealously represent their client and advised him that the law is " 'just the opposite of what you may think.' " *Id.* at 165. Capt Malanowski responded that he was " '*not aware*' " of the duty of defense counsel as the military judge described it and conceded that this standard was " '*the only way [the system] could really work.*' " *Id.* On appeal, this Court did not find implied bias, noting that "after proper instruction by the trial judge, [Capt Malanowski] essentially retracted" his initial erroneous opinion and "ultimately stated that he held no bias against civilian defense counsel in general or appellant as a result of his civilian counsel of choice." *Id.* at 167. This type of instruction on the part of the military judge, followed by recantation and rehabilitation on the part of the prospective panel member, did not occur in the instant case.

In response, the Government notes that SFC Bravo made other statements that contradicted, or at least mitigated, his problematic statements. So, the Government reasons, no further inquiries and no instructional guidance was necessary here. To be sure, prospective panel members who initially express incorrect views of the law, the facts, or their duties can subsequently clarify those views or be otherwise rehabilitated. However, the Government's position is weakened by the fact that SFC Bravo's assertions of impartiality were in response to leading questions. As this Court noted in *Keago*, "a potential panel member's predictable answers to leading questions are not enough to rebut the possibility of bias, especially when some of those questions lead to more problematic responses." 84 M.J. at 374 (citing *Nash*, 71 M.J. at 89). The Government's position also fails to take into account the fact that SFC Bravo never recanted his original view that

it was "unusual" for soldiers to retain civilian defense counsel. As a result, we conclude that this is not a case in which effective rehabilitation occurred.

At bottom, we conclude that SFC Bravo's "uncorrected misunderstanding" of relevant facts and legal issues in this case could "cause an objective observer to have substantial doubt about the fairness of [Appellant]'s court-martial panel." *Rogers*, 75 M.J. at 271. As a consequence, upon considering the totality of the circumstances and applying a standard of review closer to de novo, we conclude that Appellant's challenge presented a close case of implied bias. And "[b]ecause military judges are required to apply the liberal grant mandate and excuse members in close cases, the military judge erred by failing to do so." *Keago*, 84 M.J. at 375.

## IV. Decision

The judgment of the United States Army Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record is returned to the Judge Advocate General of the Army. A rehearing is authorized.

Judge MAGGS, concurring.

I join the Court's opinion because it follows this Court's precedents on challenges of members for implied bias. But I write separately to address a subject not fully examined in the Court's opinion, namely, the role of counsel in litigating implied bias motions.

In its opinion, the Court identifies numerous shortcomings and dispassionately ascribes all of them to the military judge:

> "[T]he military judge failed to explain his implied bias reasoning."

> "[T]he military judge failed to distinguish between actual and implied bias."

> "[T]he military judge only invoked the liberal grant mandate in a perfunctory manner."

> "[T]he military judge's ruling was predicated on a mistaken view of the facts."

> "[T]he military judge's factual analysis was lacking because he failed to consider the import of [Sergeant First Class (SFC)] Bravo's responses."

> "[T]he military judge never asked SFC Bravo to clarify what he meant by his observation that it was 'unusual' for soldiers to retain civilian defense counsel."

> "[T]he military judge never explored the question of whether SFC Bravo believed Appellant had previously been found guilty because Appellant had now retained civilian defense counsel."

> "[T]he military judge ended his inquiry" without "inquiring further into what SFC Bravo meant by '[a]ll of it.'"

> "[T]he military judge never provided instructional guidance to SFC Bravo to address his apparent incorrect belief about the circumstances under which a soldier may retain civilian defense counsel."

Anyone reading this catalog of omissions would understand that the Court is setting aside the findings and sentence in this case because the military judge did not do everything that this Court's precedents (for better or worse) require. But such an understanding would be

incomplete without an appreciation of the steps that trial counsel could have taken that might have changed this result. I therefore believe it is valuable to discuss them.

During voir dire, Appellant moved to have SFC Bravo excused on grounds of actual and implied bias. Representing the Government, trial counsel opposed the motion. When the military judge decided not to excuse SFC Bravo, that was a victory for trial counsel. But it was not enough. If trial counsel *wanted the military judge's ruling to stand on appeal*, then trial counsel also needed to take whatever additional permissible actions were necessary to build a proper record.

If a military judge does not sufficiently explain a decision, then trial counsel should ask the military judge to provide more complete reasoning. If a military judge misapprehends a fact, then trial counsel should call the problem to the military judge's attention. If a military judge does not make sufficient inquiries, then trial counsel should request the military judge to ask additional questions. Such steps by trial counsel will help the military judge make a more informed and therefore better decision. They will help establish a better record of the military judge's reasoning. And equally important, such steps might obviate any appellate issues, regardless of what the military judge decides.

To be sure, the military judge ultimately has the responsibility for ruling on an excusal motion and for explaining his or her decision. But it is patently unreasonable for counsel to expect the military judge to ask all the questions and address all the points that might later be raised on appeal when counsel does not raise them or address them at trial. It is in this context that the Court concludes that the military judge in this case abused his discretion.

Judge SPARKS, concurring dubitante.

I continue to doubt whether the so-called "sliding scale" for deference to the trial judge is a useful standard of review. *See United States v. Keago,* 84 M.J. 367, 375 (C.A.A.F. 2024) (Sparks, J., concurring in part and dissenting in part). I have previously expressed my views on this issue, so it is not necessary to reiterate them here. However, I respect the Court's position as precedent, and am obliged to concur, dubitante, with the Court's opinion in this case.